## McPHERSON v. FIRST PRESBYTERIAN CHURCH of WOODWARD et al.

No. 16908—Opinion Filed March 9, 1926.

Rehearing Denied Nov. 9, 1926.

**1.  Evidence—Judicial Notice—Nature of Automobiles—Unusual Noises—Audibility.**

The court will take judicial notice that the mechanism of gasoline motors operates on the principle of explosion, and that such explosions and other unusual noises are made by the stopping and starting of gasoline motor vehicles; and that such noises ordinarily are distinctly audible for a distance greater than 100 feet.

**2  Nuisance—General—Statutory Definition—Public and Private—Same Qualities.**

Section 7870, C. O. S. 1921, defining nuisance generally to consist in unlawfully doing an act or omitting to perform a duty, ascribes the alternative qualities of such act or omission, without which qualities no act or omission can be any kind of nuisance. The two following sections, distinguishing public from private nuisances by the number of persons injuriously affected, contemplate the same qualities.

**3.  Same—Per Se and Per Accidens—Definitions.**

Nuisances per se, or in law, and per accidens, or in fact, are judicial refinements for the expedition of justice. The former is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. The latter is an act, occupation, or structure, not a nuisance per se, but which may become a nuisance by reason of the circumstances or location.

**4.  Same—Gasoline Filling Station as Nuisance Per Accidens and Not Per Se.**

A public gasoline filling station is not a nuisance per se. Whether it be a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances. It may thus become a nuisance per accidens.

**5.  Same—Private "Nuisance"—What Constitutes.**

Though every one has the right to the reasonable use and enjoyment of his own property, he may not so use it as to unreasonably deprive an adjacent owner of the lawful use and enjoyment of his property, and one using his property in an unwarrantable manner, and thereby injuring the comfort, health, and safety of another, creates a "nuisance" which may be enjoined at the suit of the person so injured.

**6.  Same—Mere Noise as Nuisance.**

Mere noise may be a nuisance, if it be of such character as to be productive of actual physical discomfort and annoyance to persons of ordinary sensibilities in lawful use and enjoyment of their own property.

**7.  Same—Injunction Where Cause Continuous.**

Under the foregoing, if the cause of the noise and discomfort be continuous, equity will restrain it.

**8.  Injunction—Quia Timet—Grounds —Evidence.**

To enjoin a threatened nuisance, it must appear that the injury would be irreparable in damages, and the evidence must be clear and convincing, not of a possibility or apprehension, but of a reasonable probability, that the injury will be done.

**9.  Same—Injunction Against Erection of Filling Station Sustained.**

Under the record, the erection and operation of the proposed gasoline filling station would unlawfully annoy and disturb plaintiffs in the lawful use of their properties, thus constituting a threatened and continuous nuisance, irreparable in damages. The judgment for permanent injunction quia timet is not clearly against the weight of the evidence and is affirmed.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Woodward County; James B. Cullison, Judge.

Injunction by the First Presbyterian and the First Christian churches of Woodward, against J. T. McPherson. Judgment for plaintiffs, and defendant appeals. Affirmed.

Charles R. Alexander, Hayes McCoy, and Warren T. Spies, for plaintiff in error.

C. W. Herod, O. C. Wybrant, L. A. Foster, and C. H. Wyand, for defendants in error

Opinion by ESTES, C.  The First Presbyterian and the First Christian churches of Woodward, corporations, as plaintiffs, had permanent injunction against J. T. McPherson, preventing him from erecting a "drive-in" oil and gas filling station on his lots. Parties will be referred to as they thus appeared in the trial court. Defendant appeals. Being in equity, the cause was tried to the court and judgment rendered at the conclusion of the evidence of both parties. Inter alia, in substance, the court found that the erection and maintenance of the filling station in this particular neighborhood and adjacent to said churches and other public buildings would be a nuisance per se; and "would endanger the life, liberty and happiness of a large portion of people who attend those churches, and be a disturbance to their worship, and a constant annoy-

ance, and have a tendancy to lessen the good of the institutions."

The assignments of error involve both the findings of the court and the correctness of the extraordinary relief awarded. Our duty is to weigh the evidence and determine whether, under the law, the awarding of the perpetual injunction is clearly against the weight thereof. Woodward is a city of 4,000. Eighth street extends north and south, and Oklahoma avenue east and west. The Presbyterian church is on its lots on the southeast of the corners made by the intersection of said streets, the Christian church on the southwest corner, and the proposed filling station on the northeast of said four corners. On the northwest corner is located the city hall, and immediately north thereof the public library, both facing east on Eighth street. About 75 feet north of the proposed filling station is a brick garage facing west on Eighth street, and north thereof, being the northwest corner of that block, is the Methodist church. These blocks are not set apart for, nor used as, an industrial or factory district, but are conveniently and well located in one of the most popular sections of the city. There is a city ordinance preventing the parking of cars on one side of Eighth street, being a recognition by the authorities of the public need for quietude and preventing congestion in this section. At the intersection of said streets, there is a jog in Oklahoma avenue, the north curb of same, east of Eighth street, being some 30 feet south of the north curb of said street west of Eighth.

Although defendant answered by general denial, a plat of said section was introduced and consented to by defendant, and set out in his brief, showing the proposed filling station a short distance northeast of the southwest corner of his said lots and facing the southwest, with a public driveway diagonally across the sidewalks and in front of said filling station, being the ordinary corner "drive-in" filling station. No complaint is made against the character of the structure itself proposed to be built. The Presbyterian church had owned and used its property some 15 years; and the Christian church, its property, some six years. Defendant purchased his said lots a short time prior to the commencement of this action, for the purpose of locating thereon such filling station. When defendant purchased same, there was quite a large residence on the corner thereof. A short time prior to the granting of the temporary injunction in this case, defendant had moved said house a considerable distance to the east, relocat-

ing the same on the east part of his lots; had cleared a hedge fence from the south side of his property immediately across Oklahoma avenue from the Presbyterian church, and had started work on the foundation of the station. It otherwise appears that, as alleged by plaintiffs, defendant would construct and operate such filling station, unless prevented by law. The Christian church is a splendid structure, built on the unit plan, being approximately 100 feet southwest of, and faced by, said proposed filling station; and it is shown that it is the intention of that church to construct an addition thereto in the near future, on the east. The Presbyterian church building proper is approximately 100 feet east of the east line of Eighth street, facing north, and some 25 feet south of Oklahoma avenue, from which entrance is made. The record shows that this church intends to replace its building with a new and modern structure to be located immediately opposite said filling station. In the space between said buildings, as now located, and Eighth street, is a park containing a grove, in the midst of which, and facing said station, is a building called a class room, and south of said park and on the property of said church, and facing west, is its manse. Oklahoma avenue between said Presbyterian property and defendant's property is only about 40 feet from curb to curb. It is about 79 feet from defendant's property to said class room building, and about the same distance from the main building. Approximately 500 men, women, and children attend church functions on Sunday at said two churches, a considerable number of whom pass along and across the corner and driveway of said station; approximately the same number attend each church. Two services are held in each church each forenoon, and one or more services in said class room. Two services are held in each church each Sunday evening. Several functions are held during the evenings of the week in each church, and in the summer time, union religious gatherings are held on Sunday evenings for several weeks in said open park opposite said station.

No contention is made that defendant is an improper person to conduct a filling station—in fact, it is admitted by plaintiffs that he would conduct same in the ordinary manner. Several officers and members of plaintiff churches testified that if defendant were permitted to construct and operate said proposed public "drive-in" filling station, numerous motor vehicles, in patronizing the same, would, in taking on oil, gasoline, water and air, necessarily drive into such station

and stop there; that, in starting, the engines would necessarily be raced and cause extraordinary noises; that such noises could and would be distinctly audible for about a block, and particularly audible to all persons using both church premises so as aforesaid; and that, due to such proximity, particularly to said Presbyterian church, they would greatly disturb and annoy all persons so engaged in such devotions. There is some evidence tending to show that headlights from automobiles patronizing such filling station would annoy; that there would be a tendency toward traffic congestion due to the general situation; that noxious gases and odors would be emitted; that the storage of gasoline at said proposed station might be dangerous. The court based the judgment herein, in part, on findings against defendant on said latter matters.

There is no evidence that defendant would not store the gasoline in a proper reservoir or enclosure. We presume he would do so, and under Ferriman v. Turner et al., 99 Okla. 277, 227 Pac. 443, this of itself is not ground for injunctive relief. This court cannot take judicial notice that such noxious gases and odors would even pass across this narrow street to the premises of plaintiffs, and there is no substantial proof that they would do so. In Texas Company v. Brandt et al., 79 Okla. 97, 191 Pac. 166, it is recognized that a court will not take judicial notice of the distance that sparks from a locomotive might be carried. Nor is there substantial evidence that such lights would necessarily, or in reasonable probability, disturb plaintiffs. We consider all these matters—supported by slight evidence that they would exist, but not sufficient evidence that they would directly annoy plaintiffs—as circumstances in determining the paramount question— the propriety of the location and conduct of such station among said surroundings. Such circumstances would thus bear indirectly upon the ultimate right to injunction.

1. This court is bound to know—and the evidence is undisputed—that noises, really out of the ordinary, and of more or less intensity, would emanate from such filling station by such stopping and starting of engines in manner as claimed and otherwise; that such would be the case even though this station be an ordinary one and conducted by the defendant in the ordinary and even careful and usual manner. Likewise, according to the well-known facts of science, of which we take notice, the sound waves of such noises would travel at least across this narrow street, and the vibrations thereof would be perceptible farther than 100 feet away on the premises of plaintiffs.

Courts have common and current knowledge relative to automobiles, including the fact that they make unusual noises (Ex parte Berry [Cal.] 82 Pac. 44); and the fact that a city arc light will cast its rays farther than 300 feet (Meehan v. Great Northern Ry. Co. [Mont.] 114 Pac. 781). Likewise, we know that if such station be operated, such noises would be distinctly audible farther than 100 feet. If not judicially so noticed, the evidence is that such sounds could and would be heard for approximately one block. Explosions of gasoline motors—being the principle of their mechanism—and other unusual noises of automobiles are certainly of the most common knowledge and notoriety.

2, 3, 4. Defendant argues that such station would not be, as found by the court, a nuisance per se or other kind of nuisance, requiring cursory notice of the genus nuisance as well as its species. Section 7870, C. O. S. 1921, defining "nuisance," is:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or * * * Fourth. In any way renders other persons insecure in life, or in the use of property".

In 29 Cyc. 1152, it is declared:

"The term 'nuisance' means literally annoyance; anything which works hurt, inconvenience or damage, or which essentially interferes with the enjoyment of life or property."

The statute thus defines "public nuisance":

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." Comp. Stat., sec. 7871.

It is also provided that every other nuisance, not included in said definition, is private. We do not deem it necessary to determine whether such filling station would be a public nuisance as affecting an entire neighborhood or any considerable number of persons. Although a thing may be at the same time both a public and private nuisance, such proposed filling station would affect plaintiff corporations at least privately, if it would be a nuisance:

In order to expedite justice, courts have made the classification of nuisances per se, and per accidens, thus defined in 29 Cyc. 1153:

"A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. The number of things which are nuisances per se is limited, and by far the larger class of nuisances is that which may be termed nuisances in fact or nuisances per accidens, and consists of those acts, occupations or structures which are not nuisances per se but may become nuisances by reason of the circumstances or the location and surroundings. It has, however, been said of certain acts, occupations or structures that they are nuisances per se in certain localities, whereas in other localities they would not be nuisances."

A disorderly house, an obstruction of a highway, or any other thing that is prohibited by public morals and law, cannot exist any place in the state without being a nuisance per se or in law. Its location is immaterial. Whether a thing, not a nuisance per se, is a nuisance per accidens or in fact, depends upon its location and surroundings, the manner of its conduct, or other circumstances. Although, as stated in Cyc., supra, a certain nuisance per accidens may be held by some courts to be a nuisance per se, such is not the rule in this jurisdiction. It is held in Patterson v. Roxana Petroleum Co., 109 Okla. 89, 234 Pac. 713:

"An instrumentality that is at all times and under all circumstances, irrespective of its location and environment, a nuisance, is said to be a 'nuisance per se'. There are instrumentalities, however, which in their nature are not nuisances, and whether a particular instrumentality constitutes a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances."

Although there is thus some authority to the contrary, the learned trial court should not have found that such proposed filling station would be a nuisance per se. Marland Refining Co. v. City of Hobart, 113 Okla. 36, 237 Pac. 857. If same be a nuisance, it would be one per accidens, as shown in the body of the opinion in that case. The statute first above defines the generic term "nuisance"—not nuisance per se, per accidens, public or private nuisance. A thing cannot be a nuisance of any kind, under said statute, unless same possesses some of the alternative qualities ascribed by section 7870, supra. Public, private, per se, and per accidens nuisances, in order to become nuisances at all, must annoy, injure, or endanger the comfort, repose, health or safety of others, or possess some of the other qualities described in said statute. A bowling alley is not a nuisance per se, but it may become a nuisance

when it creates a disturbance to the annoyance and discomfort of neighbors. See citations 29 Cyc 1186. A carpet cleaning establishment in a thickly settled neighborhood of private residences is a nuisance when the dust and moths from it permeate the neighboring houses. Id. 1169. A coal shed or yard is not even prima facie nuisance although it may be so located as to become a nuisance. Id. 1170. A factory may be a nuisance when it is so operated as to injuriously affect the neighbors or the public at large, but it is not a nuisance per se. Id. 1173. Not only is a public filling station not a nuisance per se, but it is not a nuisance at all, if located and conducted where and in the manner in which it ought to be respecting the rights of others. It may become a nuisance per accidens.

5. In cases like this, the court is between Scylla and Charybdis—the right of private property secured by guarantees of the federal and state Constitutions, which includes the right to acquire, possess, protect, and enjoy, and dispose of such property (12 C. J. 945), and the rule followed in Parker et al. v. Colburn (Cal.) 236 Pac. 921, that no man has an inherent or constitutional right to maintain a building or premises or conduct a business which is a nuisance, or which, under certain conditions may become a nuisance. Especially, in such actions, the relief depends upon all the facts and circumstances of each particular case, the rules of law being less difficult than their application.

"Although as an abstract question, a right of action exists as well for a slight as for a great injury, such right not being dependent upon the degree of the injury, nevertheless nuisance is a term that may be generally stated to consist of degrees; it may be very great or insignificantly slight. This question of degree depends upon varying circumstances so as to preclude a precise definition of what amount of annoyance, discomfort, or inconvenience will constitute a nuisance. It is difficult to define just what degree of injurious influence must be reached in order to warrant the court in determining what circumstances constitute a nuisance. * * * The determination, however, of the question rests in sound judgment and depends upon common sense in each case". Joyce on Law of Nuisance, sec. 19, and numerous authorities.

In Bixby v. Cravens et al., 57 Okla. 119, 156 Pac. 1184, citing with approval the Arkansas court, it is held:

"Though every one has the right to the reasonable use and enjoyment of his own property, he may not so use it as to unreasonably deprive an adjacent owner of the

lawful use and enjoyment of his property, and one using his property in an unwarrantable manner, and thereby injuring the comfort, health and safety of another, creates a 'nuisance' which may be abated at the suit of the person so injured.

"Such injury must not be fanciful or imaginary, nor such as to result in a trifling annoyance, inconvenience, or discomfort, which may affect those who possess too sensitive a nature or too fastidious a taste. The law is applied only to the normal man—the man of ordinary habits and ordinary sensibilities."

The allegations and proof on the issue of noises bring this case within the foregoing rules as a private nuisance. As stated by Lord Selborne in Gaunt v. Finnery, 8 Ch. App. 8, a nuisance by noise is emphatically a question of degree, and is more difficult to prove than when the injury complained of is the effect of a visible or tangible cause.

6. In 29 Cyc 1185, it is said:

"Mere noise may be a nuisance, if it be of such a character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibilities, and this, though such noise may result from the carrying on of a trade or business in a town or city. But as many useful acts are necessarily attended with more or less noise, reasonable noises in an appropriate locality are not necessarily nuisances, and even though they are disagreeable and annoying".

The right of every man to worship in manner as he pleases, formally or otherwise, or not at all, is an inherent right, vouchsafed to every American citizen by the fathers and founders of this Republic through constitutional guarantees. Indeed, the religion or lack of religion of one is not even to be inquired into officiously by any other. Courts must know that ordinary worship is attended by more or less solemnity and quietude. Numerous officers and members of plaintiff churches testified that such noises would disturb and annoy their devotions. They ought to know. Their claim is not fanciful or fastidious, judged so as aforesaid by the man of ordinary sensibilities. Plaintiffs, no doubt, secured said sites for their purposes because they are in a neighborhood of said city removed from the bustle of the marts of trade and those greater noises incident to traffic, commerce and business, which all are bound in law to endure, when engaged in business. Plaintiffs had long enjoyed the benefit of such locations before defendant purchased his said lots. This neighborhood contains three churches, a public library, and a public city hall; is calculated to be a zone of comparative repose—subject, of course, to the necessary and incidental noises and inconvenience from the ordinary public travel and the like. While the rights of plaintiffs here involved are in connection with the use of their property, they are essentially personal rights in contradistinction to property rights. In the very heart of this section, defendant proposes to erect and conduct such "drive-in" public filling station, and thus subject plaintiffs to the ejaculations of the most ubiquitous of automobiles and other motor vehicles. The rights the defendant seeks to protect are more particularly property rights—he seeks pecuniary profit. The rights of the plaintiffs to be thus secure entails the correlative duty upon defendant—as well as all others—not unlawfully to interfere with such right by disturbance. This right of plaintiffs is not peculiar to them—it appertains to all worshippers of whatever creed or sect. Public schools, maintained at great expense, hospitals, and other congregations of people are entitled to similar protection from unlawful disturbances, according to the ordinary standards and the facts of each case. The complexity and conflict of rights and correlative duties, consequent upon an age of marvelous invention and mechanism, must be borne in mind by courts in applying the law to a given state of facts. Nor is it unreasonable, in the instant case, that defendant should be prevented from invading with such proposed business, this particular section of Woodward. Surely there are appropriate places in that city, other than this, wherein to locate such filling station.

7. In Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 27 L. Ed. 739, it is held:

"In an action at law, damages may be recovered against a person who maintains a nuisance which renders the ordinary use and occupation of property physically uncomfortable to its owner; and if the cause of the annoyance and discomfort be continuous, equity will restrain it."

Cases may be cited in which public garages and the like have been determined to be nuisances per accidens, and abated or restrained in residential districts and in districts occupied by churches and other public buildings, irrespective of the violation of building restrictions or ordinances, and irrespective of their being annoyance to the general community constituting public nuisances. See Phillips et al. v. Donaldson (Pa.) 112 Atl. 236, and cases there cited; and Eaton on Equity, p. 589.

8. It is strenuously urged by defendant that injunction quia timet does not lie in this case. In Town of Rush Springs v. Bentley et al., 75 Okla. 119, 182 Pac. 664, it is held:

"As a general rule, courts of equity have power to give relief against either public or private nuisances by compelling the abatement, or restraining the continuance of the existing nuisance, or enjoining the commission or establishment of a contemplated nuisance."

See cases therein cited, and, also, Kenyon v. Edmundson, 80 Okla. 3, 193 Pac. 739. Clearly, plaintiffs' rights would not be reparable in damages by successive actions, if this station were permitted to be built and operated. It would not be practical to measure such damages. They should not stand by and permit defendant to construct and operate such station, before asking equitable relief, if they desired such relief. In 32 C. J. 42, the general rule is:

"It is not sufficient ground for injunction that the injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented; but there must be at least a reasonable probability that the injury will be done if no injunction is granted, and not a mere fear or apprehension." Burnett v. Sapu'pa Refining Co., 59 Okla. 276, 159 Pac. 360; Woodward v. Raynor, 29 Okla. 493, 119 Pac. 964; Hodgins v. Hodgins, 23 Okla. 625, 103 Pac. 711.

In sum, to enjoin a threatened nuisance, it must appear that the injury would be irreparable in damages, and the evidence must be clear and convincing, not of a possibility or apprehension, but of a reasonable probability, that the injury will be done. It is clear that, unless prevented by law, defendant will construct and operate such station. Under the authorities herein, it is also clear that the operation of such station would be a nuisance.

9. Defendant contends that the judgment is clearly against the weight of the evidence. He did not testify. Two preachers from Weatherford, Okla., testified on his behalf, in substance, that defendant had conducted a filling station in their city in as close proximity to their churches as in the instant case, and that such witnesses were not disturbed thereby. On cross-examination, they admitted, however, that unusual noises emanated from such filling station and such witnesses heard same. While they denied that there was annoyance or disturbance therefrom, they also admitted that such noises were audible. We do not think such testimony at all conclusive in fixing the standard of quietude to which plaintiffs are entitled, particularly since one witness admitted that defendant usually closed his filling station during the services; that one witness had been instrumental in causing an ordinance to be passed by the city of Woodward, preventing

certain noises generally from automobiles; and further admitted that his church had leased to defendant the space on which such filling station was maintained.

We conclude that it is clearly pleaded and proved that defendant, unless prevented by law, will construct and operate such filling station; that unusual noises, emanating from the operation of such proposed station, would annoy and disturb plaintiffs to such extent and degree as unlawfully to interfere with them in the use of their properties in this particular location; that the other incidents of such filling station, and the circumstances surrounding such operation in this particular location, corroborate the claim of plaintiffs that they would be so annoyed and disturbed thereby. It follows, as matter of law, that such location and operation of such filling station would be unlawful and constitute a nuisance; and since these things clearly appear to be probable, not merely possible, injunction quia timet will lie. The judgment not being clearly against the weight of the evidence, let the same be affirmed.

By the Court: It is so ordered.