(No. 20493.—

PAUL FLIGELMAN *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 23, 1932.*

ORR, J., dissenting.

SAMUEL MICON, for appellants.

WILLIAM H. SEXTON, Corporation Counsel, (LEON HORNSTEIN, and MARTIN H. FOSS, of counsel,) for appellees.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Paul Fligelman and other operators of gasoline filling stations in the city of Chicago filed a bill in the circuit court of Cook county praying that the city be enjoined from enforcing a certain ordinance which provided that no gasoline filling station should be operated in said city without a license. Answer was filed and the cause was referred to a master, who found all issues of law and fact in favor of the city. The chancellor overruled exceptions to the master's report and entered a decree dismissing the bill for want of equity. From this decree Fligelman and the others appealed.

The chancellor having certified that the validity of a municipal ordinance is involved and that public interest requires that the appeal be taken direct to this court, the cause is before us for review.

The ordinance in question, enacted March 21, 1918, and subsequently amended, as set out in this bill, defines "filling stations" as structures or places where a container or containers containing gasoline or other designated inflammable liquids are kept or located for the purpose of selling, offering for sale or distributing from such container or contain-

ers. After providing that no person, firm or corporation shall manage, conduct or operate the business of a filling station without having obtained a license, it lays down certain requirements to be followed in making application therefor and provides that no license shall issue until after approval of the application by the commissioner of police, the commissioner of buildings and the division fire marshal. Section 286 is alleged in the bill to be invalid. As set out in this bill it provides license fees as follows: Five dollars for containers or tanks in one and the same premises and having a total capacity of 100 gallons or less; $15 for each portable wheel-tank; $25 for containers or tanks in one and the same premises and having a total capacity of more than 400 gallons but not exceding 1065 gallons, and for containers or tanks having a total capacity in excess of 1065 gallons, $50 for the first 1065 gallons and an additional fee of $50 for each 1065 gallons capacity or fraction thereof. The ordinance next provides that all licenses shall expire on the 31st day of December following date of issuance. The bill then sets out the following provision as section 288: "All filling stations shall be conducted and maintained in accordance with the provisions of chapter 41 of this ordinance, and shall be inspected by the division fire marshal in charge at least twice a year. The fee for such inspection shall be paid as above stated for such inspection." Further sections of the filling station ordinance provide that licenses shall not be transferable; prescribe certain requirements for change of location and obtaining frontage consents from owners of adjacent property; prescribe that with certain exceptions storage of inflammable liquids shall be outside of buildings; prohibit smoking in filling stations, and provide a penalty for violation of any of its provisions.

Chapter 41 above referred to is entitled "Inflammable liquids" and contains many provisions relative thereto. Gasoline is enumerated, along with other liquids, as falling

within the scope of the chapter. Among other things it is provided that any person desiring to install a tank for the storage of such liquids shall first obtain a permit from the chief of fire prevention and public safety; that before issuing such permit said chief shall first inspect the location where the tank is to be installed, and if the site is satisfactory the applicant shall pay to the city collector a fee of $10 for each tank of the capacity of 500 gallons or less and an additional twenty-five cents for each additional 100 gallons capacity or fraction thereof; that "said fee shall be paid prior to the issuance of such permit and shall cover the cost of inspection thereof;" that no tank shall be covered or used until the installation, material and workmanship have been finally inspected, approved and certified by said chief; that delivery of such liquids shall be made directly to the storage tank through the filling pipe by means of a hose or pipe between the filling pipe and the tank wagon or car from which such liquid is being drawn; that such liquids shall be drawn from tanks by pumps so constructed as to prevent leakage or waste, or by some other system approved by the chief of fire prevention and public safety, with controlling apparatus and piping so arranged as to allow control of the amount of discharge inside the building by any derangement of the system; that such pump or other drawing-off device shall be located on or above the grade floor, near an entrance or other well ventilated place; that dry sand, ashes, chemical extinguishers or other fire retardants shall be provided, with pails, scoops and other fire appliances; that a reasonable quantity of such loose noncombustible absorbents as above mentioned shall be kept convenient for use in case of excessive oil leakage or overflow; that barrels or drums containing such liquids shall not be piled upon each other or stored in any passageway or beneath any window and no open lights shall be permitted in any such storage yard; that on all empty barrels or drums which have contained such liquids the caps and plugs shall

be replaced immediately after emptying; that such liquids shall not be drawn or handled in close proximity to open flame or fire but may be handled when lighting is by incandescent electric lamps installed in accordance with certain prescribed requirements; that "No smoking" signs shall be installed in such number and location as the chief of fire prevention and public safety may require; that no tank or any motor vehicle shall be filled while lights on said vehicle are burning or while the motor on such vehicle is running or the occupants thereof smoking; that transfer of such liquids from storage tank to motor vehicles shall be by approved hose, only, said hose not to be over twelve feet in length; that portable filling tanks of certain description may be used under certain conditions; that such liquids shall not be stored in dangerous proximity to open flame or fire; that all connections from any tank with sub-surface drainage systems shall be so arranged as to prevent the flow of such liquids to such drainage systems or the leakage of inflammable gases from such systems; that vent-pipes, draw-off pipes and valves shall meet certain prescribed requirements; that all defective and leaking piping shall be made tight immediately or replaced; that piping, unless without joints or connections, shall not extend through any room containing an open light or fire; that the end of the filling pipe for underground tanks shall be carried to an approved location outside the building and be provided with an approved metal box, with cover, which shall be kept locked except during filling operations, and that a screen strainer of designed description shall be placed in the supply end of such pipes. Other sections of the article deal with the construction and maintenance of outside aboveground tanks, which are permitted under the filling station ordinance, and prescribe various requirements in connection therewith.

Appellants contend that the city had no power to impose a license fee upon the operators of filling stations. In

support of this contention they cite many cases in which it is pointed out that a municipal corporation derives its existence and its powers from the General Assembly; that it possesses no inherent power; that in order to legislate upon or with reference to a particular subject or occupation such a corporation must be able to point out the statute which gives it the power to do so; that a statute which grants powers to a municipal corporation is strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it; that the implied powers which a municipal corporation possesses and may exercise are those necessarily incident to the powers expressly granted, and that since a city has no power, except by delegation from the General Assembly, to license any occupation or to require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the city's charter or necessarily implied in or incident to the power expressly delegated. These principles are, of course, well settled. In their light appellants argue it must be held that the enactment of the licensing ordinance was unwarranted, because nowhere in the statutes can there be found a grant of express power in that respect, nor can it be said that any such power is necessarily implied.

It must be admitted that the city was given no express power to enact the measure against which appellants' bill is here directed, but we cannot accede to the contention that power to take such action is not to be implied. By section 65 of article 5 of the Cities and Villages act (Cahill's Stat. 1929, chap. 24, par. 65,) power is given "to regulate and prevent storage of gunpowder, tar, pitch, resin, coal oil, benzine, turpentine, hemp, cotton, nitroglycerine, petroleum, or any of the products thereof, and other combustible or explosive material and the use of lights in stables, shops, and other places, and the building of bonfires; also to regulate, restrain and prohibit the use of fire-

works, firecrackers, torpedoes, Roman candles, skyrockets, and other pyrotechnic displays." In *Klever Karpet Kleaners* v. *City of Chicago,* 323 Ill. 368, we said: "If the regulation of certain conditions affecting the public safety has been delegated to a city and the efficient regulation of such conditions requires the conduct of a business peculiarly affected by them to be controlled by the limitations of a licensing ordinance, the power of the city to adopt such an ordinance will be necessarily implied. It is clearly within the police power of the city to provide by ordinance for the regulation and prevention of the storage of coal oil, naphtha, benzine, petroleum, or any of the products thereof, and other combustible or explosive material. Such regulation may properly include the provision of methods of installation and use of tanks for the handling and storage of volatile, inflammable liquids therein, pumps or devices for the removal and conveyance of the contents of such tanks, and where, in a building in which such liquids are stored, a business is conducted in connection with which such liquids are used, the regulation may include provision for the lighting and ventilation of the building, the manner of construction, and may require the persons in charge of such volatile, inflammable liquids and of the handling and using thereof and of the room in which and the equipment with which they are used, to be competent persons, and may provide for the examination of such persons and the inspection of the places, instrumentalities, methods and means of storing and using such volatile, inflammable liquids. The ordinance in question contained provisions of this character."

It is a matter of common knowledge that gasoline is a product of petroleum, and it and certain other products stored and handled at filling stations are known to all to be highly combustible, and, under some conditions, explosive. (*Spiegler* v. *City of Chicago,* 216 Ill. 114.) Although the fire and explosion hazard involved in conducting filling stations in Chicago is shown of record, yet, altogether apart

from the evidence, judicial notice may be taken of the fact that the business of storing and handling gasoline and similar liquids and transferring them at filling stations from tanks to motor vehicles in a great city is, without the observance of proper precautions, attended with a peculiar degree of danger to life and property. (*People* v. *Ericsson,* 263 Ill. 368; *New Britain* v. *Kilbourne,* 109 Conn. 422, 147 Atl. 124.) By reference to the regulations incorporated for the conduct of filling stations it is readily apparent that the ordinance with which we are dealing here is one which makes provisions for methods of installation and use of tanks for the handling of inflammable liquids. Among the detailed provisions which it embodies are requirements with respect to the pumps and devices to be employed for the removal and conveyance of the contents of such tanks and regulations governing the lighting of the premises about which such liquids are stored and handled. It provides for official inspections in this connection. The regulations here involved, applied, as they are, by the ordinance to the conduct of a business which in the last analysis is the storage of such liquids and their subsequent withdrawal and sale, must be held to be reasonably adapted to the purpose of securing the protection of human life and property. In enacting the ordinance the city did not exceed its powers. *Klever Karpet Kleaners* v. *City of Chicago, supra; Kizer* v. *City of Mattoon,* 332 Ill. 545; *People* v. *Andrews,* 339 id. 157.

Appellants next contend that the license fee provided is exorbitant and confiscatory "and is out of all proportion to the benefits received by filling station owners." To the extent that this contention contemplates that no licensing ordinance can be upheld unless the licensees thereunder receive an equivalent in personal benefit it is clearly untenable. (*Koy* v. *City of Chicago,* 263 Ill. 122.) In so far, however, as it raises the question as to whether the ordinance is a legitimate exercise of regulatory power as distinguished

from a revenue measure, solely, it demands consideration. It is an established principle that where the power to license is impliedly conferred upon a city as an incident to regulation it may only be exercised in connection with other proper regulations of the business or occupation for which the license is granted. The city has no power to exact such a license fee solely for the purpose of raising revenue. In the exercise of the police power for the purpose of regulation the authority of a municipality is limited to such a charge for a license as will bear some reasonable relation to the additional burdens imposed upon the municipality by the business or occupation licensed and the necessary expense involved in police supervision. (*Metropolis Theatre Co.* v. *City of Chicago,* 246 Ill. 20; *Herb Bros.* v. *City of Alton,* 264 id. 628; *Condon* v. *Village of Forest Park,* 278 id. 218; *Aberdeen-Franklin Coal Co.* v. *City of Chicago,* 315 id. 99; *Bauer* v. *City of Chicago,* 321 id. 259; *Nature's Rival Co.* v. *City of Chicago,* 324 id. 566; *Ward Baking Co.* v. *City of Chicago,* 340 id. 212.) Assuming that if it clearly appeared that the charge for a license bore no reasonable relation to the additional burdens imposed upon the municipality by the operation of gasoline filling stations and the necessary expense involved in police supervision thereof the ordinance could not be upheld, no such showing is here made.

Appellants direct attention to the inspection fee of $10, which must be paid at the outset before the station is opened and business commenced, and assert that the provisions governing these preliminary inspections are the only regulatory provisions there are. After the owner commences business, they say, there are no regulatory ordinances which control the conduct of the business, and the license fee is solely for the privilege of doing business. In this the record does not bear them out. What the record discloses is, that there are some 1600 filling stations in the city of Chicago, that the licensing ordinance prescribes a wide variety of details which must be observed in conduct-

ing and maintaining such stations, and that there shall be inspections by the division fire marshal in charge. Under these circumstances the contention of appellants cannot be sustained. *Klever Karpet Kleaners* v. *City of Chicago, supra.*

Appellants contend, finally, that the license fee cannot be upheld because it is "burdensome and oppressive." They argue that under other ordinances they are compelled to pay inspection fees for washing-racks, greasing-racks, steam boilers, air pumps and electric signs maintained by them, and that they cannot also pay the license fee here involved and make a living. This argument is without merit. The power of the city to enact this ordinance does not depend upon the non-enactment of other licensing ordinances which cover a different ground. *City of Chicago* v. *American Tile and Gravel Roofing Co.* 282 Ill. 537.

The decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

Subsequently, on petition for rehearing, the following additional opinion was filed:

Per CURIAM: Appellants' petition for rehearing having been allowed the cause has been further considered. We adhere to the view expressed in the foregoing opinion that the city of Chicago in this case has power to regulate the business of selling gasoline and volatile oils and to license such business. In addition to the reasons given in the opinion, it may be observed that in 1919 the General Assembly passed an act entitled, "An act to regulate the storage, transportation, sale and use of gasoline and volatile oils," in force July 1, 1919. (Laws of 1919, p. 692.) This act provides that "except in cities or villages where regulatory ordinances upon the subject are in full force and effect the Department of Trade and Commerce shall have power to

make and adopt reasonable rules and regulations governing the keeping, storage, transportation, sale or use of gasoline and volatile oils." This is more than a mere implication of power in the city to regulate the sale of gasoline. It is, in effect, a declaration of the General Assembly that such ordinances as had been enacted prior to the passage of the act and were then in force are to stand as a valid exercise of the power given by clause 65 of section 1 of article 5 of the Cities and Villages act. The power to regulate the business of selling gasoline rests in the legislature and it may grant or withhold it as it chooses. In *Kizer* v. *City of Mattoon,* 332 Ill. 545, this court held that power was conferred on the city of Mattoon by clause 65 of section 1 of article 5 of the Cities and Villages act to pass an ordinance regulating the sale of gasoline.

We have re-examined the abstract and adhere to the former holding that the license fee here imposed is not invalid as unreasonable or as bearing no reasonable relation to the additional burdens imposed upon the municipality by the business of operating gasoline filling stations but is justified by the necessary expense involved in police supervision, thus falling within the rule stated in the cases cited in the opinion on that point. The record shows that the business of handling and selling gasoline is attended with unusual hazards, and, while not a nuisance *per se,* is, by reason of the dangerous character of the substance handled, one requiring, in the interest of public safety and health, an unusual degree of regulation. Whether a thing not a nuisance *per se* is a nuisance *per accidens* or in fact, depends upon its location and surroundings, the manner of its conduct, or other circumstances. (*McPherson* v. *First Presbyterian Church,* 120 Okla. 40, 248 Pac. 561.) The evidence in the record shows numerous instances where the regulatory forces of the city were engaged for extended periods of time in correcting damage done by the leakage of gasoline tanks, fires caused by the explosive and highly combustible nature

of the ingredients handled and the necessity for health regulations arising out of the business. Chapter 41 of the Chicago municipal code, incorporated in the ordinance here attacked, contains extensive regulations necessitated by the dangerous character of gasoline and like volatile oils. These regulations impose a substantial service and expense in the protection of the public against those dangers. The evidence shows that inspections and corrections of defects are from time to time made by the health department, police department and bureau of fire prevention and safety. These unusual precautions are occasioned by the character of the ingredients handled in gasoline filling stations. The burden of regulating the sale of gasoline under this and the incorporated ordinance is not alone one of inspection but includes all burdens of protection arising from the nature of gasolines and volatile oils. It cannot be said, therefore, that the fees exacted do not bear a reasonable relation to the burdens of regulation.

Counsel in argument on rehearing do not agree as to the provision of section 288 concerning the number of inspections required. As set out in the pleadings, it provides at least two inspections per year. They likewise disagree concerning an item in the schedule of license fees provided in section 286, whether that item is $25 or $50. These sections of the ordinance are quoted in the opinion as they appear in the pleadings. They do not appear to have been offered in evidence before the master and this court is unable to determine who of counsel are correct. The determination of that dispute is not, however, vital to the decision of the case.

We are of the opinion that the ordinance is valid. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE ORR, dissenting.