HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.

Van V. Lain and William V. V. Lain, Appellees, v. Alfred Rennert et al., Defendants.
Appeal of Walter Piper, Jr., Appellant.

Gen. No. 41,496.

Opinion filed February 26, 1941.

HARRY J. GUYON and ELI B. HERREN, both of Chicago, for appellant; CLYDE C. FISHER, of Chicago, of counsel.

DILLNER & DEARBORN, of Chicago, for appellees; ARTHUR E. DILLNER and ROBERT P. DEARBORN, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Catalpa avenue is an east and west street, Ashland avenue a north and south street, Clark street a north and south street and Balmoral avenue an east and west street. These streets bound a block in the city of Chicago, Catalpa avenue on the north, Balmoral avenue on the south, Clark street on the east and Ashland avenue on the west. In the summer of 1938, Alfred Rennert owned the premises bounded on the north by Catalpa avenue, on the west by Ashland avenue and on the east by Clark street, and extending south from Catalpa avenue about 84 feet and east and west along Catalpa avenue approximately 283 feet. A public alley, paralleling Clark street and Ashland avenue and approximately midway between these 2 streets, extends north from Balmoral avenue to the southern boundary of the Rennert property. Because it does not cross the Rennert property, it is what is commonly known as a "blind alley." However, as the Rennert property was vacant, it became a common practice for persons using the so-called "blind alley" to continue across the Rennert property in going to and from Catalpa avenue. Van V. Lain and William V. V. Lain owned the premises bounded on the south by Catalpa avenue, on the east by Clark street, on the west by Ashland

avenue and extending north from Catalpa avenue approximately 150 feet. The southern boundary from Clark street to Ashland avenue measures about 280 feet. Catalpa avenue separates the Lain property from the Rennert property, the Lain property being on the north side of the street and the Rennert property being on the south side of the street. In the spring of 1937, the Lains erected a funeral home on their property, the real estate and improvements thereon representing an investment of approximately $300,000. Alfred Rennert desired to erect a gasoline filling station on the east half of his property, and through an agent named O. A. Helgeson, he negotiated with Walter Piper, Jr., an operator of filling stations, for the purpose of inducing the latter to take a long lease on the premises. Under an ordinance of the city of Chicago, it was necessary, in order to secure a permit for the erection and maintenance of a filling station, to secure the frontage consents of the owners of the majority of the total frontage in feet of any lot or plot of ground lying wholly or in part within lines 150 feet distance from and parallel to the boundaries of the proposed filling station site, including driveways and inclosing fences. Under the ordinance the total property frontage affected was 1379.24 feet, the majority of which is 689.63. Of this the Lain frontage constituted 446.37 feet and the Rennert frontage 213.89 feet. Thus, the Lain and Rennert frontages, as computed under the terms of the ordinance, aggregated 660.26 feet. The combined Rennert and Lain frontages lacked 29.37 feet of being sufficient to constitute a majority of all the frontage affected in the consideration of an application for a permit to build and operate a gasoline filling station. Rennert and Piper approached the Lains for the purpose of inducing them to consent to sign a frontage consent for the erection and operation of a filling station. The Lains agreed to execute the consent in consideration that Alfred Rennert and Char-

lotte Rennert, his wife, would execute a covenant. The parties so agreed and on August 3, 1938, the Rennerts signed, sealed and delivered a covenant that Alfred Rennert was the owner in fee simple of the west half of the property heretofore described; that the said property will be kept "free and clear of all signs, billboards and other advertising matter of any kind, nature or description; that the above described property will be kept covered with grass, properly seeded and mowed, and at all times to be kept in a good and sightly condition, and that the said covenant shall run with the land for a period of five years from the date thereof." The covenant was recorded in the recorder's office as document No. 12195735. On October 25, 1938, Geraldine Rennert, as lessor, and Walter Piper, Jr., as lessee, executed a lease covering the premises heretofore described, bounded on the north by Catalpa avenue and extending from Clark street to Ashland avenue. The lessor agreed to erect on the east portion of the premises a building adapted to the operation and maintenance of a gasoline filling station, together with the utility connections and other materials specified in the plans, and agreed to complete the construction of the filling station within 90 days. It was contemplated that the cost of constructing this filling station would approximate $17,450. The lease was to run for a term of 15 years from the time the building would be completed and ready for occupancy, and the lessee agreed to pay rent of $325 per month for the first 5 years, $350 per month for the succeeding 5 years and $425 per month for the final 5 years. Clause 2a of the lease provides that the "lessee hereby expressly understands that there is of record a certain covenant recorded as Document No. 12195735 concerning the west half of said premises, wherein the said west half is to be kept free and clear of all signs, billboards and other advertising matter of any kind, nature or description, and wherein the said west half is to be covered with grass

and to be properly seeded and mowed, and at all times be kept in a good and sightly condition, and which said covenant runs for a period of 5 years from August 3, 1938, and Lessee hereby expressly agrees that he is taking this lease subject to said covenant so recorded as Document No. 12195735.'' Application for the permit was made by Alfred Rennert. Frontage consents were signed by the owners of property having a frontage of 882.56 feet, or 192.93 feet more than a majority of frontage. On November 3, 1938, a permit for the erection of a filling station was issued by the commissioner of buildings. The filling station was constructed and opened for business in January or February, 1939. It will be noted that although the covenant was executed by Alfred and Charlotte Rennert, the lessor is Geraldine Rennert. On May 8, 1939, the Lains filed their complaint in chancery in the circuit court of Cook county against Alfred and Charlotte Rennert and Walter Piper, Jr. They alleged the execution and delivery of the covenant. The complaint erroneously stated that the lease was between Alfred and Charlotte Rennert and Piper, and alleges further that ''the consideration involved for the execution of the aforementioned covenant by Alfred Rennert and Charlotte Rennert to Van V. Lain and William V. V. Lain was the execution by Van V. Lain and William V. V. Lain of frontage consents in accordance with an Ordinance of the City of Chicago, by Van V. Lain and William V. V. Lain to Walter Piper, Jr., for the use of the east one-half of said property by Walter Piper, Jr., for a gasoline filling station.'' Another allegation of the complaint states that the purpose of plaintiffs in effecting the execution of the covenant was to ''create an attractive view and to maintain for the neighborhood the value and sightliness of such neighborhood, and thus to maintain the value of their property; to afford to patrons of the plaintiffs' business a pleasing and sightly view

upon entering and leaving plaintiffs' place of business.'' The complaint further alleges that the premises of defendants were totally covered with gravel and that it will be necessary that such gravel be removed before any grass can be planted or grown; that defendant Piper "is now using the premises for the parking of automobiles," and that no action has been taken by defendant toward the fulfillment of the covenant, particularly that part wherein the defendants Alfred and Charlotte Rennert covenanted to keep the premises covered with grass, properly seeded and mowed, and at all times in a good and sightly condition. Plaintiffs pray that the court direct the defendants, Alfred and Charlotte Rennert, to do or cause to have done, the act or acts necessary so that the property will be kept covered with grass, properly seeded and mowed, and at all times in a good and sightly condition, and that an order be entered restraining the defendants Alfred and Charlotte Rennert and Walter Piper, Jr., "from acting in any manner with respect to said premises, or from using said premises for the purpose of parking or allowing automobiles to be parked or stored on said premises; from causing any act to be done with respect to said premises whereby the premises could not be covered with grass and kept in a good and sightly condition; that the defendants be restrained from the placing of gravel or other like materials upon the premises, excepting such materials as will aid in the fulfillment of paragraph Three of said covenant.'' The defendants Alfred and Charlotte Rennert and Piper filed separate motions to dismiss the complaint. On motion of the plaintiffs Alfred and Charlotte Rennert were dismissed as defendants. Piper's motion to dismiss was overruled and he answered. The case was referred to a master in chancery, who, after taking the depositions of witnesses, found that defendant violated the covenant by placing gravel upon the premises and by permitting cars to be

parked thereon. He also found that defendant did not make any attempt "to keep the said premises covered with grass, properly seeded and mowed, and at all times in good and sightly condition." The master found, as a matter of law, that "a court of chancery will not issue a mandatory injunction which would require the court to supervise and direct the performance of a duty for a protracted period," and recommended that "plaintiffs' prayer for injunction be granted and that the prayer for a mandatory injunction be denied and that a decree be entered in accordance with the findings and conclusions herein contained." Objections were filed by the plaintiffs and defendant, which were overruled by the master. These objections were permitted to stand as exceptions. The court overruled the exceptions and entered a decree denying the prayer for a mandatory injunction; restraining the defendant Piper from "acting in any manner with respect to said premises or from causing any act to be done with respect to said terms whereby the premises cannot be covered with grass and kept in a good and sightly condition." The decree concluded by entering a judgment against the defendant in the sum of $211.15, representing approximately one half of the costs incurred. Defendant prosecutes this appeal for the purpose of reviewing the decree. The plaintiffs do not assign any cross-errors because of the action of the chancellor in overruling their exceptions to the master's report.

Defendant assails the decree on the ground that it is against public policy to traffic in frontage consents. Plaintiffs reply by stating that the consideration for the covenant is legal and binding and not against public policy, and that a party to a contract under seal "cannot avoid the contract on the ground that it is a *nudum pactum*, since a seal imports consideration sufficient to sustain the instrument." The frontage represented by the property owned by plaintiffs and the original de-

fendants lacked 29.37 feet of the majority required before a permit could issue. In addition to the signatures of the plaintiffs and the defendants, the frontage consents also bore the signatures of the treasurer of the University of Chicago and Lyndon Lesch. All of those signing had real estate fronting on Clark street, which is a business street. The real estate of plaintiffs and defendants also extended back so that it was bounded by Ashland avenue on the west. During the hearings before the master, persons who owned property fronting on the east side of Ashland avenue south of the parcel owned by the original defendants, testified in behalf of plaintiffs. They did not sign the frontage consents and apparently were not requested so to do, although their property was within the area affected. Defendant argues that persons who have the right to sign or not to sign frontage consents are charged with a duty to the public and to their neighbors and other members of the community, and that such persons must exercise their discretion without being influenced by a consideration moving to them. Defendant maintains that the consideration for the giving of the covenant is contrary to public policy and that the covenant is unenforceable. The inference is that if the Rennerts had not agreed to execute and deliver the covenant, the frontage consents would not have been signed by plaintiffs and that in signing the frontage consents the plaintiffs were influenced by their self-interest and did not discharge that duty which they owed to the public and to their neighbors. Defendant leans heavily on the case of *Theurer v. People ex rel. Deneen,* 211 Ill. 296. In that case the State's Attorney filed an information in the nature of a quo warranto against Joseph Theurer to test the validity of a dram shop license issued to him. The trial resulted in a judgment of ouster, which was affirmed by the Appellate and the Supreme Courts. The evidence showed that Norman Cummings and two

others received the sum of $1,000 for signing the application for the license (which was the equivalent of the frontage consents in the instant case). The court said (302):

"If the legislative power, instead of providing that the license should be issued upon the written application of a majority of the property owners, according to frontage, had provided the question of issuing the dram-shop license should be decided at an election by the property owners within the same district, would it be contended that the applicant for a license lawfully might control the result of the election by purchasing votes? We apprehend not." In *People v. Griesbach*, 211 Ill. 35, the court said (40):

"Those persons . . . are charged, in a degree, with a duty to the public. . . . He is entrusted with a power the exercise whereof concerns the welfare of the public, and he therefore has a duty to discharge to his neighbors and other members of the community whose interests, rights, morals and safety are concerned and may be affected by his act." In support of the proposition that a property owner who signs or refuses to sign a frontage consent to erect a gasoline service station owes a duty to the public, defendant cites *Fligelman v. City of Chicago,* 348 Ill. 294 (300), where the court said:

"Although the fire and explosion hazard involved in conducting filling stations in Chicago is shown of record, yet, altogether apart from the evidence, judicial notice may be taken of the fact that the business of storing and handling gasoline and similar liquids and transferring them at filling stations from tanks to motor vehicles in a great city is, without the observance of proper precautions, attended with a peculiar degree of danger to life and property." The plaintiffs suggest that the contract is valid because it is sealed. It is

well established, however, that in equity the real consideration may be inquired into and that the parties are not concluded by the recitals in the instrument, though under seal. In *Way v. Union Cent. Life Ins. Co.*, 61 S. C. 501, 39 S. E. 742, the Supreme Court of South Carolina said (745):

"It is true, that the referee finds, and the Circuit Judge confirms such finding, that the assignment is under seal, which imports a consideration, therefore, it cannot be attacked for lack of consideration. This may be so at law, but not so in equity, at least in a case of this kind; and this is a case on the equity side of the Court—for the cancellation of a written instrument."

In *Gray v. Hook*, 4 N. Y. 449, the court of appeals said (459):

"A seal cannot protect an illegal contract, nor prevent an inquiry into the legality of its consideration." We conclude, therefore, that despite the seal we have the right to inquire into the legality of the consideration. The evidence shows that the signing of the frontage consent in consideration for the covenant, the erection of the filling station and the execution of the lease were acts done in contemplation of one another. This is not a case where the rights of innocent third parties are involved. The Rennerts, Piper and the plaintiffs knew all of the facts. Plaintiffs are attempting to force defendant to carry out a covenant obtained by the performance of an act which is contrary to public policy. We are of the opinion that the giving of the covenant in consideration for the signing of the frontage consent, or vice versa, was contrary to public policy and should be struck down as was the consent to the issuance of a dram shop license in the *Theurer* case. We are convinced that the covenant is invalid.

Defendant urges other points, but it is unnecessary to extend the opinion by a consideration thereof. For

the reasons stated the decree of the circuit court of Cook county is reversed and the cause remanded with directions to dismiss the complaint for want of equity and to enter judgment against plaintiffs for costs.

*Revised and remanded with directions.*

HEBEL, P.J., and DENIS E. SULLIVAN, J., concur.