James O'LAUGHLIN, Plaintiff in Error,

v.

CITY OF FORT GIBSON, Oklahoma, Defendant in Error.

Flossie THOMPSON et al., in person, and for all persons similarly situated, Plaintiffs in Error,

v.

CITY OF FORT GIBSON, Oklahoma, Defendant in Error.

Nos. 40824, 40858.

Supreme Court of Oklahoma.

Feb. 14, 1964.

Rehearing Denied Feb. 21, 1964.

Michael E. Kelly, Muskogee, for plaintiff in error, James O'Laughlin.

Julian B. Fite, A. Carl Robinson, Hardy Summers, Muskogee, for other plaintiffs in error.

Luton, Lunn, Ferguson & Hudson, Muskogee, Hirsch & Harkin, Oklahoma City, for defendant in error.

JACKSON, Justice.

These cases concern the same subject matter and issues and have been consolidated by agreement for hearing in this court. We will refer to the parties as they appeared in the trial court.

Plaintiffs alleged in their petition that they all live on lands adjacent to or in close proximity to a rural lot upon which the city of Fort Gibson proposes to construct a "lagoon type" sewage disposal unit. They further alleged that the sewage disposal unit, if constructed, would constitute a nuisance to them, and would irreparably damage them and their property because of the foul and noxious odors that would be emitted; they also allege that the location of the proposed

lagoon is in an area subject to overflow by the Grand River and that in times of such overflow, "pollution, stench, poisonous materials and various diseases injurious to plants, animals and humans" would be disseminated. They obtained a temporary restraining order against the defendant city, and the matter of an injunction was set for hearing at a later date.

Motions to dismiss and to dissolve the temporary restraining order were filed by the defendant city, and certain evidence, in the form of affidavits, was introduced in support of the motions. One of them, by a Fort Gibson official, established that the proposed project was a part of the Accelerated Public Works program of the federal government, through the Community Facilities Administration and the Department of Health, Education and Welfare. It disclosed that Fort Gibson had made application to the government for grants in aid for the construction of the project; that the application had been approved and a grant in the amount of about $215,000 had been accepted; that a speedy disposition of the matter was essential in order that the federal grants might not be lost.

Another affidavit was by the Senior Sanitary Engineer of the State Department of Health. He outlined the methods used by the State Department of Health in discharging its statutory obligations, (see 63 O.S.1961 § 614 et seq.) and stated that the lagoon type of facility was regarded by the department as satisfactory, and further stated that in instances where complaints of odors had been received, they had usually been traced to treatment units ahead of the lagoon cells and that in every case malfunctions had been readily correctable. He appended to his affidavit a list of about 150 towns and communities in Oklahoma in which the lagoon type of facility is said to be in satisfactory use.

The third affidavit was by the president of a company engaged in the business of operating public water and sanitary sewage systems. He stated that when a lagoon of the type under consideration is constructed, absolutely no noticeable objectionable odor emanates from the lagoon. He said that a similar lagoon had been operated for several years directly across the street from the expensive home of a well known Midwest City building contractor, on land leased from him, and that he watered his pedigreed Shetland ponies from it. He said that a well known Oklahoma City restaurateur had built an expensive home virtually on the banks of another similar lagoon, had landscaped it, and now maintains several swans upon it.

Although no formal order appears in the record it appears that the motion to dismiss was overruled and the restraining order was modified to permit the defendant city to proceed with its plans except for the actual paying out of money.

Thereafter the defendant city filed its answer and the matter came on for hearing. Plaintiffs introduced as witnesses several residents of the area who testified generally that in their opinion the lagoon type of unit would cause noxious and offensive odors to invade their homes, and that property values in the area would be lowered. Plaintiffs also introduced two witnesses who live near Haskell, Oklahoma. They testified that a similar lagoon unit near their homes occasionally gave off offensive odors which were "real bad".

However, plaintiffs also introduced the testimony of an engineer from the firm which built the facility at Haskell. He testified that there was an essential difference between the Haskell facility and the proposed Fort Gibson installation. He said that because of the location of a cannery at Haskell, it was necessary to design the facility at Haskell to process a considerable and varying amount of industrial waste, and that this problem did not exist in connection with the Fort Gibson installation.

The same engineer testified for the defendant city and amplified his explanations in that regard. He said that the Haskell facility included two oxidation ponds to carry the normal domestic waste from the town of Haskell, and that the addition of

"pre-treatment" units was necessary to handle the industrial waste from the cannery, which on occasion was more than three times the volume of the domestic load. He said the odors from the Haskell facility came from the "pre-treatment" units handling the industrial waste, and not from the oxidation ponds; and that the odors arose because the pre-treatment units were cycled instead of run continuously as they should have been. He said that corrections had been made and that the odors had disappeared. He pointed out that the Fort Gibson installation would consist of two oxidation ponds only, with no pre-treatment facilities for industrial waste, and that in his experience no odors ever arose from the operation of oxidation ponds only.

At the conclusion of the hearing, the trial court ruled generally for defendant and against plaintiffs, and plaintiffs appeal.

In this court, plaintiffs argue two propositions, both of which are based upon the assumption that they proved the existence of a nuisance, or prospective nuisance, in the trial court.

■ In this connection, it is well settled that in a case of equitable cognizance a judgment of the trial court carries with it a finding of all the facts necessary to support it which could have been found from the evidence. Riddle v. Brann, 191 Okl. 596, 131 P.2d 999. In the instant case, the trial court's general finding for defendant includes an implied finding that no nuisance, or prospective nuisance, was shown by plaintiffs' evidence. It is equally well settled that the judgment of a trial court in an action of equitable cognizance will not be disturbed on appeal unless it is clearly against the weight of the evidence. Priddy v. Shires, 204 Okl. 664, 233 P.2d 298. After a careful consideration of the evidence in this case, we cannot say that the trial court's judgment is clearly against the weight thereof.

In the briefs, plaintiffs rely principally upon the 1919 case of Town of Rush Springs v. Bentley, 75 Okl. 119, 182 P. 664. In that case, the trial court granted a permanent injunction against the town, preventing the construction of a sewer basin and septic tank in close proximity to the homes of plaintiffs. This action of the trial court was based upon his finding of fact, to which no objection was made, that the septic tank would emit odors which would be detectable by, and offensive to, the plaintiffs, and would be very obnoxious. In affirming the action of the trial court, this court held in effect that the judgment of the trial court was not clearly against the weight of the evidence.

Of course in the instant case, the roles of the parties are reversed, because here the finding of the trial court was against the plaintiffs instead of for them and, as noted above, it is not clearly against the weight of the evidence.

Plaintiffs also cite Ferry v. City of Seattle, 116 Wash. 648, 203 P. 40, and Everett et ux. v. Paschall, 61 Wash. 47, 111 P. 879. In these cases, the Washington court applied a rule which is somewhat difficult to state with precision, to the general effect that an injunction may be granted to prevent the construction of a contemplated nuisance where it is shown that the contemplated nuisance gives rise to a real and existing fear of injury on the part of plaintiff, whether or not the fear has any foundation in fact.

■ Although such a rule might be proper in extreme cases, no case is called to our attention in which it has been applied in this jurisdiction. We think the sounder rule is the one stated as follows in McPherson v. First Presbyterian Church, 120 Okl. 40, 248 P. 561, 51 A.L.R. 1215.

"To enjoin a threatened nuisance, it must appear that the injury would be irreparable in damages, and the evidence must be clear and convincing, *not of a possibility or apprehension, but of a reasonable probability, that the injury will be done.*" (Emphasis supplied.)

■ In the instant case, the trial court's finding for defendant included an implied finding that there was no "reasonable prob-

**510**

ability" that the plaintiffs would be injured. We cannot say that such finding is clearly against the weight of the evidence.

The judgment of the trial court is affirmed.