**GULF OIL CORPORATION,**
Plaintiff in Error,

v.

**A. L. HUGHES and Jacqueline Hughes,**
Defendants in Error.

No. 39388.

Supreme Court of Oklahoma.

Feb. 13, 1962.

Rehearing Denied May 2, 1962.

James B. Diggs, Edwin S. Hurst, Comet C. Johns, Oklahoma City, for plaintiff in error.

Loeffler & Allen, Sapulpa, for defendants in error.

BERRY, Justice.

In their petition filed below, the defendants in error, hereafter referred to as "plaintiffs", alleged that they owned an improved tract of 40 acres of land lying in Creek County, Oklahoma; that during the Year 1956 plaintiff in error, hereafter referred to as "defendant", "commenced certain oil operations on land adjacent to (theirs), commonly known as waterflood project; that as a part of said project, said defendant caused great quantities of salt water to be pumped into a well known as an inject well under pressure; that as a result thereof water was forced through more porous rock and earth formations into the streams of water on the land of plaintiffs which were and had been used by them for some time for domestic and livestock purposes"; that prior to commencement of project "the wells from which plaintiffs obtained their supply of domestic and livestock water produced water of excellent quality and potability"; that the water thereafter became unpalatable and highly undesirable for washing or other domestic purposes; that plaintiffs were and will be compelled to purchase water and transport it to their residence; that as a result of pollution of the source of water supply, the value of their land was reduced from $18,950.00 to $9,000.00. Plaintiffs prayed for damages in the amount of $9,950.00.

Plaintiffs filed an amended petition in which they reiterated the allegations of their original petition and pleaded further that the flooding project caused their land to be "permanently damaged which occurred sometime subsequent to October 1, 1957."

Defendant filed an answer in which it denied generally the allegations of plaintiffs' amended petition and pleaded that plaintiffs' alleged cause of action was barred by limitations.

The jury to whom the case was tried, found for plaintiffs and fixed the amount of their recovery at $6,000.00. From order of trial court denying defendant's motion for new trial, which was directed to judgment on the jury's verdict, defendant perfected this appeal.

For reversal, defendant contends that "Liability for underground pollution of a water well from oil and gas operations must be based on negligence or nuisance and the submission of the case to the jury on the theory of absolute liability was error," and that "The instructions on the measure of damages were erroneous."

The contentions made by defendant are such that we deem it unnecessary to summarize the evidence and will only refer to evidence that is thought to bear directly on defendant's contentions.

Defendant points out that the case was tried and submitted to the jury on the theory that recovery on plaintiffs' part was not contingent upon negligence on the defendant's part and that plaintiffs could recover if it were shown that the water-flooding project were the direct and proximate cause of their alleged damages. This is not disputed by plaintiffs who assert in substance that the evidence showed that the project was carried on in such a manner as to create a private nuisance, and for said reason recovery on their part is not contingent upon a showing of negligence on defendant's part.

We will first consider cases cited by plaintiffs and other cases which bear directly on plaintiffs' contention.

In Fairfax Oil Co. v. Bolinger, 186 Okl. 20, 97 P.2d 574, Bolinger sought to recover damages to his property which allegedly

were occasioned by vibrations emanating from defendant's drilling a test well for oil and gas on property adjacent to Bolinger's property. The action was predicated upon the proposition that the drilling operations were so conducted as to create a private nuisance and the case was submitted to the jury on said theory.

■ Fairfax Oil Co. contended that the drilling of a test well is a lawful business and does not constitute a nuisance per se. While the contention was accepted as correct, it was nevertheless held that recovery on the part of Bolinger was not contingent upon his showing that the company negligently carried on its drilling operations which caused the damages. In the first paragraph of the syllabus, this was said:

"Where the facts show that a lawful business is being conducted in such manner as to constitute a private nuisance causing substantial injury to property, the aggrieved party may recover compensation for the injury sustained."

and in the body of the opinion this was said:

"In this and many other states the common law rule does not obtain. Constitutional provisions have intervened to protect a property owner against losses in the nature of real and substantial injury to his property, resulting from the use of adjacent or nearby property by its owner. See E. I. Dupont etc. Co. v. Dodson, supra [49 Okl. 58, 150 P. 1085]; Kenyon v. Edmundson, Adm'r, 80 Okl. 3, 193 P. 739. Though the use be legal, if property of another is substantially damaged as a result thereof, the latter may recover as for a nuisance in fact. St. Louis-S[an] F[rancisco] R. Co. v. Matthews, 174 Okl. 167, 49 P.2d 752. While a particular use may not be a nuisance per se it may grow into a nuisance per accidens, McPherson v. First Presbyterian Church etc., 120 Okl. 40, 248 P. 561, 51 A.L.R. 1215; and a legalized use of property becomes a nuisance per accidens if that use substantially damages the property of another. Such is the purpose and effect of section 23, article 2, of the Constitution. An aggrieved owner may not abate a legalized use of another's property. But it does not necessarily follow that the former is not entitled to recover compensation for any damage which he may be able to establish as resulting from that use. E. I. Dupont etc. Co. v. Dodson, supra."

■ It was contended in British-American Oil Producing Co. v. McClain, 191 Okl. 40, 126 P.2d 530, that where the drilling of a well was carried on in a lawful manner, liability for damages resulting from the operation could only result if negligence were shown. This contention was rejected. The second paragraph of the syllabus of that case is identical with the first paragraph of the syllabus to Fairfax Oil Co. v. Bolinger, supra. In the body of the opinion it was pointed out that "In a case of this character the use need not be of a careless or negligent nature, or unreasonable or unwarrantable to entitle the injured party to recover"; that Art. 2, Sec. 23 of the Okla.Const. to effect that private property shall not be taken or damaged for private use without compensation, served to modify the common law. We there quoted with approval the matter appearing in Fairfax Oil Co. v. Bolinger that is quoted supra.

The landowner in Garland Coal & Mining Co. et al. v. Few (10th Cir.) 267 F.2d 785, asserted that his property was damaged as the result of strip coal-mining operations that were conducted on adjoining property. He alleged among other things that the operations resulted in diverting surface water which caused flooding of his land. The case which arose wholly in Oklahoma, was submitted to the jury on the theory that recovery on the landowner's part was not contingent upon a showing of negligence on the part of the operators; that a private nuisance results when a person so used his property as to cause a substantial injury to the property of another; that if such

were shown, the provisions of Art. 2, Sec. 23, supra, were applicable and the landowner should recover proved damages.

In rejecting the operator's contention that the trial court erred in so submitting the case, the court in the last cited case cites and reviews the cases heretofore cited and other decisions of this Court to the same general effect.

Defendant cites Cities Service Oil Co. et al. v. Merritt, Okl., 332 P.2d 677; Pine et al. v. Rizzo et ux., 186 Okl. 35, 96 P.2d 17; Harper-Turner Oil Company v. Bridge, Okl., 311 P.2d 947, and Larkins-Warr Trust et al. v. Watchorn Petroleum Co. et al., 198 Okl. 12, 174 P.2d 589, as being in point of fact and as sustaining its contention. We are unable to agree.

In the first cited case (332 P.2d 677), it was stated that "The basis of liability for injury or damages to property by pollution of subterraneous waters, from oil, gas, salt water or like substances in oil wells must be either negligence or nuisance." Recovery was there sustained on the theory that the facts showed a nuisance. British-American Oil Producing Co. v. McClain, supra, is cited and quoted from with approval.

In the second cited case (96 P.2d 17), the judgment was reversed because "The plaintiffs did not offer any competent evidence to establish the acts of negligence which they had charged in their petition nor any evidence from which it could reasonably be inferred that the detriment which plaintiffs had sustained had been caused by the drilling and operation of the oil well." For obvious reasons the case is not in point.

While recovery in the third (311 P.2d 947) cited case was sustained on the theory that pollution to the landowner's water well resulted from Harper-Turner Oil Company's negligence, it was not there held that recovery in such a case is wholly dependent upon evidence showing that pollution resulted from negligence.

In the fourth and last cited case (174 P. 2d 589), "Trouble developed in defendants' well, and in their operations to remedy the situation, large quantities of water from upper water strata went into the well and down into the oil bearing sand". This, according to plaintiff, "drowned their well". Plaintiffs sought to recover on the theory that defendant negligently conducted the operations by which it sought to remedy the "trouble" with its well; that plaintiffs' damages resulted from defendant's trespass and violated plaintiffs' rights under Art. II, Sec. 23, supra. Judgment for defendant was affirmed because no negligence was shown.

If Watchorn Petroleum Co.'s normal business operations had brought about the condition which Larkins-Warr Trust et al. asserted caused damages to their well, the above cited case could be considered as analogous, but such is not the case. The damage was directly attributable to "trouble" (an accident) and the action that was promptly taken to remedy or abate the trouble.

In the instant case, the court instructed the jury in part as follows:

"* * * if you should find that the Gulf Oil Corporation conducted water flooding operations for the recovery of oil in the vicinity of the land of Mr. and Mrs. Hughes, and if you should further find that such water flooding operations caused the water supply of the Hughes' to become unfit for drinking or other household uses, and that such water flooding operations were the direct, natural and proximate cause of the damage and injury to the water supply of the Hughes, then you are instructed that the Hughes should recover damages from the Gulf Oil Corporation, * * *."

We are of the opinion that the instruction fairly stated the law applicable to the facts. See cases first herein cited. We note that in British-American Oil Producing Co. v. McClain, supra, an instruction of the same general purport was given and that the giving of same was approved on appeal.

We next consider defendant's remaining contention to the effect that the trial court erred in giving instructions on plaintiffs' measure of damages.

■ An instruction was given to the effect that if the jury found that the damage was permanent, plaintiffs' "measure of damages is the difference between the fair market value of the land before as compared to the fair market value after the water supply on the property was destroyed for domestic use, if such was done"; that "In the event you determine that the damage resulting from the water supply pollution is not permanent then in that event the measure of damages would be the cost of drilling a new well to such a sand in which water fit for domestic consumption could be found, if there is such a sand."

There was competent evidence that the water sand to which plaintiffs' well had been drilled was permanently damaged and that plaintiffs' damages exceeded the amount of the verdict. Defendant asserts in substance that this did not serve to show that the damage which plaintiffs sustained was permanent. They point to the fact that a geologist testified that potable water was being produced from a well drilled to a different water sand on land adjoining plaintiffs' land. He testified that in his opinion this sand "would probably be found 100 feet below the depth of the Hughes'" well; that if a well were to be drilled to said sand on plaintiffs' land, it probably would produce a satisfactory supply of unpolluted water; that the cost of drilling and equipping the proposed well would not not exceed $600.00.

Defendant argues that the testimony of the geologist is not refuted and that his testimony therefore shows that plaintiffs' damage was not permanent.

The geologist's testimony was based wholly upon the proposition that since unpolluted water was being produced from a given sand underlying land adjoining that of plaintiffs, the sand would probably be found under plaintiffs' land and probably would produce potable water in satisfactory quantities. While the fact that the testimony was based upon probabilities may not have served to render it inadmissible, said fact does go to the weight of the evidence and the matter of whether the jury was bound by same.

■■ It is a matter of common knowledge that the fact that a water sand is found at a given point which produces a satisfactory supply of potable water does not prove that the sand will be found at a given point some distance away or if found that it will produce a satisfactory supply of potable water. In Midland Valley R. Co. v. Lowery et al., 207 Okl. 227, 248 P.2d 1042, this was said in the second paragraph of the syllabus:

"The jury may follow their own convictions, based on their own experience, observations and common knowledge, although contrary to the expert opinions in civil cases."

We said in Peppers Refining Company v. Spivey, Okl., 285 P.2d 228, 231, that "The jury was entitled to weigh the testimony of defendant's expert witnesses and accord such testimony the weight to which they deemed this evidence entitled."

In the instant case, the jury chose to disregard the testimony of the geologist. Under the facts of this case, such was their privilege.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON and IRWIN, JJ., concur.

HALLEY, J., dissents.

HALLEY, Justice (dissenting).

I dissent because I do not think there was sufficient evidence in this case to show that plaintiffs' water wells and those that could be drilled in the future would forever be contaminated by the defendant's operations. This being so I think the trial court's instructions on the measure of damages were incorrect.