**GREYHOUND LEASING & FINANCIAL CORPORATION, on behalf of itself and others similarly situated, Plaintiff-Appellee,**

v.

**JOINER CITY UNIT, Defendant-Appellant.**

No. 2–70.

United States Court of Appeals, Tenth Circuit.

March 3, 1971.

Rehearing filed Aug. 18, 1971.

Louis A. Fischl, Ardmore, Okl. (Eldon E. Scott, Dallas, Tex., Joseph M. Culp

and F. Lovell McMillin, Ardmore, Okl., with him on the brief), for defendant-appellant.

Ernest E. Specks and Louis P. Bickel, Dallas, Tex. (Johnson, Bromberg, Leeds & Riggs, Dallas, Tex., Robert J. Emery, of Lytle, Soule & Emery, Oklahoma City, Okl., with them on the brief), for plaintiff-appellee.

Philip R. Wimbish, Tulsa, Okl., for amici curiae, Joseph W. Morris, et al.

Brief submitted by Kent F. Frates and Dee A. Replogle, Jr., Oklahoma City, Okl., for amicus curiae, Okl. Independent Petroleum Ass'n.

Before PICKETT, BREITENSTEIN, and SETH, Circuit Judges.

SETH, Circuit Judge.

This is a class action which was commenced by the plaintiff which was an interest owner in two oil and gas leases and two wells which it asserted were permanently damaged by the encroachment of salt water into the underlying producing formations, caused by the secondary recovery operations of the defendant unit. The plaintiff's wells and leases are located outside the boundaries of the unitized area operated by the defendant.

The action was tried to a jury and plaintiff recovered $142,404.41 as the damage to the Hester-Dumas lease, and the sum of $387,440.11 as damage to the Sarasota lease.

The action concerns the Joiner City Unit and the Joiner City Field located in Carter County, Oklahoma. The first well was drilled in 1953 and the field was developed on a forty-acre spacing pattern. There were initially five recognized producing zones, most or all of which underlie some four thousand surface acres. The pool is approximately five and a half miles long and two miles wide, and is a truncated folded structural trap. The secondary recovery operation by the injection of salt water by the Unit operator began in 1965, at which time some ninety-five or ninety-six wells had been producing by primary means.

The named plaintiff is a fractional interest owner in leases on two forty-acre tracts located at the extreme end of the pool. There was a well producing on each of these tracts until the incident took place which was the subject of this suit. These are referred to as the "plaintiff's leases" or "plaintiff's wells."

In 1961 and 1962 some of the operators began advocating a unitization of the pool. This was followed by negotiations and engineering work which continued until a plan was adopted and application filed with the Oklahoma Corporation Commission. The hearing on the application for unitization was held in 1965 together with an application to reclassify the five producing zones as a single source of supply. The record shows that representatives of plaintiff's predecessor in interest participated in the engineering work preliminary to the unitization. Long before the hearing, the then owners of the plaintiff's leases insisted that these leases, although in the pool, be not included within the Unit boundaries, and that the reclassification proceedings likewise exclude them. The proposed Unit boundaries were redrawn by the proponents to meet this objection and thus the proposals submitted to the Commission did not include plaintiff's leases. The defendant argues that they so agreed to the exclusion of plaintiff's leases to avoid further delay in unitization. Representatives of plaintiff's predecessor were parties and participated actively in the Commission hearings on the Unit and for reclassification.

The Unit began injecting water in September 1965 at points about a mile from plaintiff's nearest lease. The record shows that the injected water reached plaintiff's wells on August 15 and August 19, 1966.

On this appeal the defendant urges that the trial court was in error in applying a rule of law which is described by the defendant as one of absolute liability. It also urges that the action constitutes a collateral attack on the orders of the Commission, and that the plaintiff is required to seek administra-

tive relief instead. It further asserts that it should have been afforded the defense, or correct instructions relating to the defense of consent and the assumption of risk.

The trial court ruled as a matter of law in its pretrial order that the plaintiff need not have resorted to administrative relief before the Oklahoma Corporation Commission before commencing the legal proceedings; that the action was not a collateral attack on the order of the Commission; that there was no estoppel or assumption of risk by the plaintiff. The court further ruled that the fact that the Unit, together with secondary recovery methods, had been approved by the Commission did not entitle the defendant "to immunity from suit by the plaintiff on the grounds alleged." The action was thus for all practical purposes limited to the private nuisance theory.

The jury was instructed in substance that the Unit was constituted lawfully, and that it was empowered to conduct the secondary recovery operation which was its purpose, including the injection of salt water, and that the evidence showed no negligence on its part in carrying out the operations. The court further told the jury that the existence of these facts did not prevent the defendant from being liable for damage caused to the plaintiff's leases by reason of the intrusion of the salt water.

The appeal concerns basically the questions of whether or not the doctrine of private nuisance should be applicable under these circumstances; what this doctrine is in Oklahoma, and whether or not the fact that the secondary recovery operations were approved by the Oklahoma Corporation Commission at hearing in which the plaintiff participated (although their acreage was excluded) results in an immunity being afforded to the defendant in this action, and the relegation of the plaintiff to administrative relief. At the conclusion of plaintiff's case, the trial court ruled that no negligence had been shown in the Unit operations.

The several Oklahoma Supreme Court decisions which have considered encroachments into the water or oil and gas strata underlying a plaintiff's property have applied a modified private nuisance doctrine. This is essentially the common law doctrine as altered by a provision in the Oklahoma Constitution which the Oklahoma courts have said removes the common law elements of carelessness or unreasonableness. The State Constitutional provision is Article 2, section 23, which provides in part:

"No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law."

The Oklahoma court in Gulf Oil Corp. v. Hughes, 371 P.2d 81 (Okl.1962), referred to and quoted from its earlier decision in Fairfax Oil Co. v. Bolinger, 186 Okl. 20, 97 P.2d 574 (1939). The court noted that the common law rule had been modified by the constitutional provision referred to above. The court quoted from the Fairfax case: "Though the use be legal, if property of another is substantially damaged as a result thereof, the latter may recover as for a nuisance in fact." The court in Gulf Oil Corp. v. Hughes stated that recovery is not dependent upon a showing of negligence, and the act or use need not be shown to be careless or unreasonable to permit recovery. The instruction given by the trial court in Gulf Oil Corp. v. Hughes stated that damages could be recovered if defendant conducted the waterflood and it was the direct, natural, and proximate cause of the damage. Nothing more was required in the instructions by way of characterization of the acts of the defendant, and the Oklahoma Supreme Court approved such a standard. Gulf Oil Corp. v. Hughes was a damage action for salt water encroachment on subsurface fresh water sources caused by a waterflood.

In Fairfax Oil Co. v. Bolinger, 186 Okl. 20, 97 P.2d 574 (1939), an action based on damages from vibrations and referred to above, the court stated that the action was:

"* * * prosecuted on the theory that the well had become a private nuisance, causing injury to plaintiff's property * * * or, if not a nuisance, the well caused damages which are compensable by defendant under section 23, article 2, of the Constitution, * * * which provides that no private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner."

The well there concerned had been drilled in a lawful manner, in a place where wells were permitted. The "business" was thus lawful, no negligence was established, but the court said "* * * a legalized use of property becomes a nuisance per accidens if that use substantially damages the property of another. Such is the purpose and effect of section 23, article 2, of the Constitution." The Oklahoma court has considered the doctrine in several other cases including British-American Oil Producing Co. v. McClain, 191 Okl. 40, 126 P.2d 530 (1942); Larkins-Warr Trust v. Watchorn Petroleum Co., 198 Okl. 12, 174 P.2d 589 (1946); West Edmond Salt Water Disposal Ass'n v. Rosecrans, 204 Okl. 9, 226 P.2d 965 (1950), and West Edmond Hunton Lime Unit v. Lillard, 265 P.2d 730 (Okl.1954). In the Lillard case, the court affirmed a finding that damages caused to plaintiffs in their attempt to pull casing had in fact resulted from the subsurface salt water encroachment from defendant's injection wells, and affirmed the jury verdict. The action was against a duly approved statutory unit. In Rosecrans, a somewhat earlier case, the nature of the cause of action was discussed by the court but no damages were found under the facts to have occurred.

We must take the decisional law prevailing in Oklahoma to be as expressed in the opinion in Gulf Oil Corp. v. Hughes, 371 P.2d 81 (Okl.1962), and with special attention to the approval therein of the trial court's instructions to the jury, which are the same for all practical purposes as given by the trial court in the case before us. This rule should be applied to the somewhat different facts before us unless these differences provide some substantial reason to the contrary. We find that the differences do not provide such a reason.

The defendant and the amici strongly urge that an exception or variation to the Oklahoma private nuisance doctrine should exist by reason of the statutory authority of the Oklahoma Corporation Commission, the exercise of this power by the initial recognition of the common source of supply, the spacing for the pool, by the approval of the Unit and its secondary recovery aims, by the participation of the predecessor in interest of plaintiff in the negotiation and engineering work antecedent to the formation of the Unit, and participation as a party in the hearing on the approval of the Unit. During the Commission hearings, the plaintiff or its predecessor insisted that the area on which it controlled the leases not be included within the Unit boundaries. It was not so included, and the Commission thus permitted secondary recovery methods to be used in the Unit area and primary recovery methods to be used on the adjacent area not included in the Unit although the Commission had theretofore recognized that both areas constituted a common source of supply. Under the order approving the Unit, the operator was required to advise plaintiff as to the location of injection wells within one mile of plaintiff's lease lines and to give notice as to volumes and rates of injection. However, a reclassification of the several producing zones was also before the Commission at the time the Unit was considered, but this also included and was approved as to the Unit area only and not including plaintiff's leases. Further at the conclusion of the hear-

ings and upon entry of its order, the Commission expressly retained jurisdiction of the case.

The unitization was accomplished under the Oklahoma statute which permits the Commission to require nonconsenting interests in a common source of supply to be unitized if a stated percentage of working interest owners therein and a stated percentage of royalty interest owners voluntarily join the approved Unit. The Act is referred to as a compulsory unitization statute. The statute has been held to be a valid conservation measure, and thus a permissible exercise of police power. However, neither the proponents of the defendant Unit before the Commission, nor the Commission itself attempted to use the compulsory features of the unitization statute as to this Unit. Under the Act (section 287.-3) the Commission may approve the unitization of but a portion of a common source of supply if certain conditions are found to exist. This was done here, and the Unit boundaries were drawn to exclude plaintiff's leases. The condition in the unitization statute to be so met was a finding that the Unit operations on the portion of the common source of supply " * * * will have no material adverse effect upon the remainder of such common source of supply." This finding is implicit in the order of approval, but it does not follow that the Commission thereby somehow permitted the Unit operations on their authority to extend with the Commission's blessing to the portion not unitized as defendant infers. The tracts of plaintiff simply were not unitized nor reclassified, and this is clearly permitted under the statute. These tracts were thus in no different position relative to regulation than they were before the hearing. These were clearly within the same source of supply as the Unit area as the prior orders of the Commission indicated, and as the facts which are the basis for this cause of action demonstrate.

The position of the Oklahoma Corporation Commission is important as it is charged with many duties relative to the prevention of waste and the correlative rights and obligations of the various interest owners to explore for and produce the oil and gas. H. F. Wilcox Oil and Gas Co. v. Bond, 173 Okl. 348, 48 P.2d 820 (1935). This is accomplished by regulation of drilling and production methods, spacing, unitization and secondary recovery methods, fixing of allowables, and many other devices. The rule of capture is held to prevail in Oklahoma, but all subject to the exercise of this extensive jurisdiction of the Commission.

■ The defendant thus urges in substance that the existence and the exercise of the jurisdiction of the Commission over this pool, and over the parties in the prevention of waste, the qualified right of the parties to produce, and the control over the competitive position of the parties in the production of oil and gas from the reservoir, includes also the power to provide plaintiff with an administrative remedy for the incident which gave rise to this action, and which would otherwise be a tort. Thus it is urged that the rights here concerned of the parties, because of the acts and powers of the Commission, and because of the participation of the plaintiff in the administrative proceedings, are within the Commission's jurisdiction. However, we find no Oklahoma authorities nor decisions from other jurisdictions which hold that such a cause of action for damages cannot be heard by a court. It is also urged that this is no more than what would result from drainage under the rule of capture. However, this is not what took place, and instead there was the intrusion of salt water injected by defendant constituting a private nuisance under State decisions.

We also find no Oklahoma authority which would modify the rule there prevailing as to private nuisances as above described by reason of the exercise of regulatory jurisdiction by the Commission. It is apparent that the State could with statutory enactment and perhaps constitutional change alter the existing

doctrines. The defendants urge the great importance of the issue presented on appeal, and the grave threat to the industry and the economy of the State posed by the trial court's rulings on the legal issues. However, we find these rulings are in accordance with the State statutes and decisions of the Oklahoma State courts, and we must accept them. The Oklahoma courts have held that the rule is imposed by the State constitutional provision above considered, and it is thus difficult to see why this is not a complete answer to defendant's compelling public need argument.

We do not consider that Railroad Comm'n of Texas v. Manziel, 361 S.W.2d 560 (Tex.1962), although cited by the defendant, can be authority for a contrary position here in the face of the Oklahoma decisions. There is language in the opinion which supports defendant's position, but when taken as a whole the case is concerned more with the right to prevent repressuring or secondary recovery programs, and what constitutes a subsurface trespass in Texas, rather than an action for damages. The suit was to set aside a Railroad Commission order permitting water injection in a well at an irregular location under a plan for a limited waterflood. No damages were shown. Similarly, Tide Water Associated Oil Co. v. Stott, 159 F.2d 174 (5th Cir.), is of limited application and is concerned basically with participation in a unit and the fulfillment of lease obligations.

The Oklahoma statutes relative to oil and gas production, and the regulatory body and its rules and regulations present a comprehensive regulatory plan (see Harper Oil Co. v. Hayes, 431 P.2d 387 (Okl.1967), and Woody v. State Corp. Comm'n, 265 P.2d 1102 (Okl. 1954)) and machinery which has operated successfully for many years. However, we find nothing in the statutes or decisions which place within this machinery the power or duty to adjudicate an action such as this where money damages are sought. It is possible under Oklahoma law to seek an adjustment

by the Commission of the unit boundaries (52 O.S.1961, § 287.9), and perhaps some alteration of the details of the waterflood under the retained jurisdiction, but no remedy of the nature here sought is contemplated. The correlative rights of the adjoining owners were necessarily considered by the Commission insofar as the statutory requirements for unitization were examined, and insofar as rates of production, initial spacing, and methods of recovery were concerned. These were all rights subject to the exercise of the police powers of the State. This was however but a small part of the total rights and legal relationships of the various interest owners.

The plaintiff-appellee argues that under the compulsory features of the Oklahoma unitization act, the proponents of the Unit could have included the whole pool and required the joinder of the interests of the plaintiff, subject to the plaintiff's right to contest the Unit and the joinder. This they urge was the administrative-statutory device available to the proponents to make the flood effective as to the entire pool. The defendants chose to unitize part of the pool and this they had a right to do. The plaintiff or its predecessors on the other hand actively sought to remain outside the Unit, and this they had a right to do. Whether a party stayed in or out of the Unit and whether the compulsory feature of the Act was used or not is of some interest in a hindsight look at the facts, but does not really assist in the determination of the legal issues on this appeal.

The appellant urges the importance of California Co. v. Britt, 247 Miss. 718 154 S.2d 144 (1963), and of the text writers' statements which have expressed opinions that the defendant here should be insulated from this type of liability by the administrative approval of the Unit. See Brown and Meyers, Some Legal Aspects of Water Flooding, 24 Tex.L.Rev. 456, 1945–46; Methvin, Secondary Recovery Operations: Rights of the Non-Joinder, 42 Tex.L.Rev. 364, 1963–64; Williams and Meyers, Oil and

Gas Law, § 204.5. This could be desirable, but we express no opinion on it as it is apparent that the statutory law and the decisions in Oklahoma at the present time lead to a different result. We considered in Tidewater Oil Co. v. Jackson, 320 F.2d 157 (10th Cir.), similar issues under the regulatory acts and rules of the State of Kansas, and reached the same conclusion.

■ The defendant-appellant raises several additional points as error which relate also to the Oklahoma Corporation Commission, and have for the most part been considered above. It urges that this proceeding is a collateral attack upon an order of the Commission, that the agency has primary jurisdiction, and plaintiff must exhaust the administrative remedy. These points are related to the first issue above disposed of. This is not a collateral attack on any order of the Commission as no order is drawn in issue. The defendant seeks to have the general administrative powers and machinery protect it from liability in these proceedings, but no party is urging that the orders of the Commission are wrong or challenging them indirectly. The same factors were present in Gulf Oil Corp. v. Hughes, 371 P.2d 81, and West Edmond Hunton Lime Unit v. Lillard, 265 P.2d 730. The issue is instead as treated in our consideration of the first issue. The same may be said of both the primary jurisdiction issue and of the exhaustion of remedy. As to these the answer must be that no administrative remedy is available for the cause here asserted.

■ The defendant urges that the assumption of risk defense and consent defense were not afforded it under the trial court's rulings and under the instructions given to the jury. We agree with the trial court that the defense of assumption of risk was not available to the defendant. The plaintiff did not place itself in a place of danger as the doctrine contemplates. See, 73 A.L.R.2d 1378. The fact that the possibility of the intrusion of salt water was apparent to all concerned is not enough. The plaintiff was not in a position to avoid the possibility, the wells were in existence before the advent of the unitization, and nothing could be done defensively by the plaintiff alone as a practical matter. The text authorities cited by the defendant are not to the contrary as general statements of the rule. The fact that it wished to be advised of the rates and place of injection under the waterflood does not demonstrate that the plaintiff either assumed the risk or consented to the intrusion.

The consent issue was presented to the jury under suitable instructions. The requirement in the consent instructions given that there must have been shown a verbal or written agreement not to complain if damages occurred is not erroneous considering the instructions as a whole.

■ The measure of damages in the trial court's instruction is also challenged. The court told the jury that the usual measure for damages to real estate was a before and after comparison. The court then instructed the jury in effect that this could be computed on the difference before and after of the recoverable reserves. This is sufficiently in conformance with the before and after rule, and there was testimony of expert witnesses upon which the jury could so arrive at a dollar amount. This submission was also in accord with Oklahoma Statutes Annotated 1969, Title 23, § 61, relating to "economic losses." See also Phillips Petroleum Co. v. Jones, 176 F. 2d 737 (10th Cir.); Tidewater Oil Co. v. Jackson, 320 F.2d 157 (10th Cir.); Texas Co. v. Harrison, 193 Okl. 185, 141 P. 2d 802 (1943).

■ As to the amount of damages, the defendant urges that they are excessive and that proper deductions for costs of production and related matters were not made. More particularly the defendant asserts that there should have been deducted production costs. Such an adjustment does not appear separately, but there was testimony given which includ-

ed such costs and testimony as to the loss which was not challenged on this point. There is sufficient evidence in the record of the net amounts, and a method to reach them, upon which the jury could base its verdict. Further as to the point of excessiveness, the verdict was well within the spread of the experts' testimony.

We also find no error in the several other points raised on appeal.

Affirmed.