Mary T. BOYCE et al., Appellees,

v.

**DUNDEE HEALDTON SAND UNIT and Atlantic Richfield Company, Appellants.**

Mary T. BOYCE et al., Appellees,

v.

**DUNDEE HEALDTON SAND UNIT and Atlantic Richfield Company, Appellants.**

Nos. 46617, 46618.

Court of Appeals of Oklahoma, Division No. 1.

April 8, 1975.

Rehearing Denied May 13, 1975.

Certiorari Denied Jan. 31, 1977.

Released for Publication By Order of Court of Appeals Feb. 3, 1977.

Dolman & Dolman by James L. Dolman, James B. Dolman, Ardmore, for appellees.

Fischl, Culp, McMillin & Kern by Louis A. Fischl, F. Lovell McMillin, Ardmore, for appellants.

ROMANG, Presiding Judge:

These companion cases are suits for damages to three oil wells alleged to have been caused by the defendants when they forced water into a nearby well, in an effort to effect a secondary recovery of oil by means of a technique called waterflooding. The cases were consolidated for trial before the Honorable Kenneth Shilling in Carter County, and a jury returned a verdict in favor of the plaintiffs in both cases. The defendants have appealed from a judgment based on those verdicts.

Case number 46,617 is the action brought by the parties having an interest in two wells on what the parties call the "Spears" lease. Case number 46,618 is the action brought by the parties having an interest in the well located on the parcel designated by the parties as the "Wells" lease. The parties plaintiff are numerous, some of them having an interest in both cases, some in the Spears lease only, and some in the Wells lease only. The issues involved, however, are the same in both cases.

All of the wells involved herein are in the Healdton Oil Field, near Healdton, Oklahoma.

In 1958 engineering studies were commenced to determine the feasibility of flooding wells in the Healdton field with water under pressure to stimulate further production of oil.

As a result of these studies, Sinclair Oil and Gas Company submitted a plan to the Oklahoma Corporation Commission under which Section 4, Township 4 South, Range 3 West in Carter County would be treated as a unit for the purposes of this project. On February 26, 1963 the Corporation Commission found that it was necessary to create the unit to prevent waste and increase the ultimate recovery of oil and gas from the common source of supply. This unit was named the Dundee Healdton Sand Unit, and was one of the defendants in these cases. The Corporation Commission named Sinclair Oil and Gas Company as operator of the unit, but that company has since merged with the defendant Atlantic Richfield Company which thereupon became the operator.

All of the plaintiffs' wells are located in the next section north of the section covered by the unitization order, and within 200 feet of the north boundary of the unit.

Injection of water into the various Healdton Sands in accordance with the order of the Corporation Commission was begun in the unit in June, 1964. The plan of unitization approved by the Corporation Commission provided for the use of four injection wells near the north boundary of the unit. Injection Well A-4 was nearest the plaintiffs' leases. Shortly after water injection using Well A-4 was started in 1969, the plaintiffs' wells started producing water rather than oil. Plaintiffs then brought these actions seeking damages for the loss of oil production from the wells and the cost of plugging the wells, which was alleged to have been extraordinarily increased by the presence of water therein.

The jury awarded the plaintiffs interested in the Spears lease $16,125.00 and the plaintiffs interested in the Wells lease $3,000.00.

The defendants seek reversal of the judgment rendered below on the grounds that the trial court erred in its instructions to the jury, that these suits constitute a collateral attack upon the order of the Corporation Commission in contravention of 52 O.S. 1971, § 111, that the plaintiffs cannot maintain this suit until they have exhausted the administrative remedies available to them,

that the court erred in denying to the defendants the defenses of assumption of risk and estoppel, that the court erroneously instructed the jury on the defense of consent, and that the form of verdict submitted to the jury was improper.

The trial court instructed the jury that the Dundee Healdton Sand Unit was lawfully created and authorized to inject water into the producing formations lying under the sections covered, but that even though such operations were lawful in every respect and properly carried on without any negligence, if such operations resulted in an unreasonable interference with the peaceful occupation and enjoyment of their property by the owners of adjacent property, such adjacent owners might recover for such damages as they may have sustained by said operation.

It is the validity of this premise, stated explicitly in the instructions and applied to the fact in this case, which is disputed by the defendants in their first proposition.

The defendants argue that the owner of real property owns only such minerals as he is able to capture and bring to the surface; that the legislature has the power to regulate the manner and the extent to which this capture is accomplished; that the legislature has given the Corporation Commission the power to do this; the Corporation Commission by its order having determined that waterflooding operations within the unitized area would not materially adversely affect the plaintiffs' properties, the plaintiffs cannot now recover for damage to their wells.

The defendants rely, among others, on the cases of *Croxton v. State,* 186 Okl. 249, 97 P.2d 11 (1940) and *Patterson v. Stanolind Oil & Gas Co.,* 182 Okl. 155, 77 P.2d 83 (1938), wherein the plaintiff contested the validity of a spacing order entered by the Corporation Commission, refusing to divide with other owners within the spacing unit because the producing well was located on his land. In upholding the Corporation Commission, the court said at page 89,

". . . [T]he lawful exercise of the state's power to protect the correlative rights of owners in a common source of supply of oil and gas is not a proper subject for the invocation of the provisions of either the State or Federal Constitution which prohibit the taking of property without just compensation or without due process of law and forbid the impairment of contract obligations. As we view it, the property here involved has not been taken or confiscated: its use has merely been restricted and qualified. This does not violate the due process clause of either Constitution. And this would be true even though the plaintiff were able to prove a distinct loss to himself through the operation of the statutes putting said police power into force and effect."

The plaintiffs do not dispute the validity of the order of the Corporation Commission, nor do they contend that the defendants were negligent in any way. They simply assert that the lawful operation of the defendants' waterflood project and the resultant migration of water into the formation from which their wells were producing became a private nuisance when it destroyed the productivity of their wells, and that the order of the Corporation Commission does not insulate the defendants from liability under such circumstances.

In *Fairfax Oil Co. v. Bolinger,* 186 Okl. 20, 97 P.2d 574 (1939), an oil well was drilled in an area in Oklahoma City properly zoned for such an operation. Since it was properly authorized by city ordinance, the defendant in that case argued that it was not a nuisance per se, and it was not liable to the plaintiff for damages alleged to have been caused by vibrations emanating from the drilling operation in the absence of either negligence or some unusual, unreasonable or improper use of the property. The Supreme Court held, however, that the common law nuisance doctrine has been modified by Section 23 of Article 2 of the Constitution of the State of Oklahoma, and that

". . . a legalized use of property becomes a nuisance per accidens if that use

substantially damages the property of another."

In *Gulf Oil Corp. v. Hughes,* Okl., 371 P.2d 81 (1962), a case in which the waterflood operations of the defendant oil company were alleged to have damaged the plaintiffs' water wells, the Supreme Court of the State of Oklahoma followed its holding in *Fairfax Oil Co. v. Bolinger,* supra, and upheld an instruction in the trial court very similar to the instruction sub judice, noting that a similar instruction had been approved in *British-American Oil Producing Co. v. McClain,* 191 Okl. 40, 126 P.2d 530 (1942).

In 1971, the United States Court of Appeals for the 10th Circuit was faced with a dispute remarkably similar to the present case in *Greyhound Leasing & Financial Corp. v. Joiner City Unit,* 10 Cir., 444 F.2d 439 (1971). That action concerned waterflooding for secondary recovery in the Joinder City Field in Carter County, Oklahoma. The plaintiff's wells were excluded from the unit at the request of their predecessors in interest, who were present and participating actively in hearings before the Corporation Commission. The court in a well-reasoned opinion, upheld the plaintiffs' recovery in that case. The court said, at page 441,

"The several Oklahoma Supreme Court decisions which have considered encroachments into the water or oil and gas strata underlying a plaintiff's property have applied a modified private nuisance doctrine. This is essentially the common law doctrine as altered by a provision in the Oklahoma Constitution which the Oklahoma courts have said removes the common law elements of carelessness or unreasonableness."

The Constitutional provision to which the court alluded was Article 2, Section 23, which provides, in part,

"No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner . . . ."

The court then cites *Gulf Oil Corp. v. Hughes,* supra; *Fairfax Oil Co. v. Bolinger,* supra; *British-American Oil Producing Co. v. McClain,* supra; *Larkins-Warr Trust v. Watchorn Petroleum Co.,* 198 Okl. 12, 174 P.2d 589 (1946); *West Edmond Salt Water Disposal Ass'n v. Rosecrans,* 204 Okl. 9, 226 P.2d 965 (1950); and *West Edmond Hunton Lime Unit v. Lillard,* 265 P.2d 730 (Okl. 1954). The court considered and rejected the defendants' arguments that Oklahoma's nuisance doctrine should be modified by reason of the statutory authority and actions of the Corporation Commission, and concluded that the finding of the Corporation Commission that Unit operations on the portion of the common source of supply within the unit "will have no material adverse effect upon the remainder of such common source of supply" did not authorize extension of these operations outside the unit. The court further said, at page 443,

"We also find no Oklahoma authority which would modify the rule there prevailing as to private nuisances . . . by reason of the exercise of regulatory jurisdiction by the Commission.

\* \* \* \* \* \*

"The Oklahoma statutes relative to oil and gas production, and the regulatory body and its rules and regulations present a comprehensive regulatory plan (citations omitted) and machinery which has operated successfully for many years. However, we find nothing in the statutes or decisions which place within this machinery the power or duty to adjudicate an action such as this where money damages are sought. . . ."

The court said further at page 445,

". . . [T]he defense of assumption of risk was not available to the defendant. The plaintiff did not place itself in a place of danger as the doctrine contemplates. See, 73 A.L.R.2d 1378. The fact that the possibility of the intrusion of salt water was apparent to all concerned is not enough. The plaintiff was not in a position to avoid the possibility, the wells were in existence before the advent of the unitization, and nothing could be done defensively by the plaintiff alone as a practical matter. The text authorities

cited by the defendant are not to the contrary as general statements of the rule. The fact that it wished to be advised of the rates and place of injection under the waterflood does not demonstrate that the plaintiff either assumed the risk or consented to the intrusion."

In the case before this court, the trial court instructed the jury that the consent mentioned in Section 23 Article 2 may be given orally, or in writing. The defendants objected to this instruction and requested an instruction to the effect that such consent may be inferred from the conduct of the plaintiffs and their operator, Tomlinson. The conduct apparently relied upon as showing such consent was the ratification of the unitization order by certain of the plaintiffs who owned an interest in property included in the unit, and the participation of Tomlinson in the studies which preceded the order of the Corporation Commission.

Bearing in mind that it was only when the defendants' activity commenced to damage the plaintiffs' wells that it became a nuisance, we find nothing in the conduct of the plaintiffs which could be interpreted as showing their consent to such damage. Ratification of the unitization order clearly is not such consent, *Greyhound Leasing & Financial Corp. v. Joiner City Unit,* supra, but even if it were, we think the instruction of the court would have been broad enough to include it.

Since ratification of the Corporation Commission's order did not constitute consent to the damages sustained, the trial court was correct in refusing to differentiate, in the forms of verdict submitted to the jury, between those plaintiffs who had ratified and those who had not.

AFFIRMED.

REYNOLDS and BOX, JJ., concur.