Dear Senator Brown,
¶ 0 This office has received your request for an Attorney General Opinion. You asked, in effect, the following question:
Does the nuisance protection provision of the Oklahoma FeedYards Act at 2 O.S. Supp. 1996, § 9-210(C), violate ArticleII, § 23 of the Oklahoma Constitution?
 I. THE OKLAHOMA FEED YARDS ACT
¶ 1 The Oklahoma Feed Yards Act, 2 O.S. 1991 and Supp. 1996,§§ 9-201-9-215 ("the Act") governs the operations of animal feeding operations within the State of Oklahoma. Under the Act, facilities with large concentrations of livestock are required to obtain a license from the State Board of Agriculture ("the Board"). 2 O.S. Supp. 1996, § 9-208[2-9-208](A). In order to obtain a license an applicant must, among other things, satisfy the Board that the facility will properly dispose of animal waste. 2 O.S.Supp. 1996, § 9-210[2-9-210](A). For facilities that comply with the terms of their licenses and other applicable regulations the Feed Yards Act provides protection from nuisance actions. Specifically the Act provides:
 No animal feeding operation licensed pursuant to the Oklahoma Feed Yards Act, Section 9-201 of this title, operated in compliance with such standards, and in compliance with the regulations made and promulgated by the Board, that is located on land more than three (3) miles outside the incorporated limits of any municipality and which is not located within one (1) mile of ten (10) or more occupied residences shall be deemed a nuisance unless it is shown by a preponderance of the evidence that the operation endangers the health or safety of others.
2 O.S. Supp. 1996, § 9-210[2-9-210](C) (emphasis added).
¶ 2 It is this limitation on the right of affected property owners to sue a permitted feed yard which is the subject of your question.
 II. THE CONSTITUTIONAL PROTECTION OF PRIVATE PROPERTY
¶ 3 Both the United States and the Oklahoma Constitutions provide for compensation for undue interference with private property. The Fifth Amendment to the U.S. Constitution provides:
 No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
U.S. Const. amend. V.
¶ 4 The United States Constitution prohibits the uncompensated taking of private property. To constitute a taking the action must destroy all, or substantially all, of the economically productive use of the property. Lucas v. South Carolina CoastalCouncil, 505 U.S. 1003, 1015 (1992). Furthermore, in order to be compensable under the Fifth Amendment the taking must have been performed by the government; the actions of private parties do not give rise to takings claims under the Fifth Amendment. SeeTulsa Professional Collection Services v. Pope, 485 U.S. 478,485 (1988).
¶ 5 The Bill of Rights of the Oklahoma Constitution contains two separate provisions which protect private property. The first, Article II, § 23, prohibits taking or damaging property for private use:
 No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner. . . .
Okla. Const. art. II, § 23.
¶ 6 The second provision protects against taking or damaging property for public use:
 Private property shall not be taken or damaged for public use without just compensation.
Okla. Const. art. II, § 24.
¶ 7 Thus, as will be detailed below, the Oklahoma Constitution provides substantially more protection to private property than does its federal counterpart. The United States Constitution prohibits only the uncompensated taking of property. The Oklahoma Constitution prohibits the taking or damaging of property. In addition, while the United States Constitution's taking prohibition only affects governments, the Oklahoma Constitution prohibits taking or damaging of private property by private actors as well. The result of these distinctive features of Oklahoma's Constitution is the creation of a constitutional cause of action for those whose property has been injured by the acts of others.
A. Article II, § 23 Creates an Independent Cause of Action ForTaking or Damaging Property
¶ 8 Like the Fifth Amendment to the United States Constitution,see First English Evangelical Lutheran Church v. Los AngelesCounty, 482 U.S. 304, 314 (1987), Article II, § 23 is self-executing. It creates its own cause of action without the need for any action by the Legislature:
 This Court has long recognized that a private cause of action exists under Okla. Const. art. 2, § 23 in favor of adjoining landowners who are injured by the operation of a lawful business conducted on neighboring property.
Stewart v. Rood, 796 P.2d 321, 336 (Okla. 1990), reversed onother grounds by DuLaney v. Oklahoma State Department of Health,868 P.2d 676, 678 (Okla. 1993). The right to sue for damage to property exists independent of, and parallel to, the common law tort of nuisance which in Oklahoma has been given statutory form in Title 50 of the Oklahoma Code. See Fairfax Oil Co. v.Bolinger, 97 P.2d 574, 575 (Okla. 1939) (rejecting plaintiff's common law nuisance claim while upholding claim under Section 23); Oklahoma State Highway Commission v. Horn, 105 P.2d 234,237 (Okla. 1940) ("the Constitution, as we have pointed out, recognizes a right of action independent of the commission of a tort").
¶ 9 The Courts have reached the same result for actions based on Section 24 for taking or damaging property for public use.See Stowell v. Engelson, 201 P.2d 919, 921 (Okla. 1948) (statute of limitation varies depending on whether action founded on Section 24 or in tort); Oklahoma City v. West, 7 P.2d 888,891 (Okla. 1931) (purpose of Section 24 is to allow recovery where nuisance action is unavailable). Thus the same set of facts can give rise to two separate causes of action — one a statutory nuisance claim and the other a constitutional takings claim.
B. "Damage" to Property Includes More Than Physical Injury tothe Property
¶ 10 Article II, § 23 of the Oklahoma Constitution declares that private property is not to be "damaged." However, the text of the Constitution does not describe what would constitute "damage" to private property. The Courts, fortunately, have provided such a description. Damage includes physical injury to real property such as causing floors to subside, Garland Coal Mining Company v. Few, 267 F.2d 785, 790 (10th Cir. 1959) and creating cracks in walls. Seismograph Service Corporation v.Buchanan, 316 P.2d 185, 186 (Okla. 1957). However, the right a person has not to have his property damaged goes beyond physical injury to the property to include the right of quiet enjoyment of that property. The Supreme Court has held that:
 [I]nterference with the owner's peaceful occupancy and enjoyment of his premises . . . constitutes the taking of or damage to the premises within the meaning of Section 23, Article 2 of the Constitution. . . .
Schaeffer v. Schaeffer, 743 P.2d 1038, 1040 (Okla. 1987)quoting Gulf Oil Corporation v. Hughes, 371 P.2d 81 (Okla. 1962).
¶ 11 The Tenth Circuit has echoed this finding:
 [T]he term "private property" as used in Art. 2, § 23 of the Constitution is not limited to tangible subject matter, but includes the incidental right of the owner's peaceful occupancy and enjoyment of his premises. . . .
Garland Coal Mining Company v. Few, 267 F.2d 785, 790 (10th Cir. 1959).
¶ 12 Accordingly, Oklahoma courts have recognized a right to compensation for the "noxious fumes and other traits associated with an open sewage lagoon," Schaeffer, 743 P.2d at 1039, the pollution of groundwater, Gulf Oil, 371 P.2d at 81; noise and dust from blasting, Garland Coal, 267 F.2d at 787; and the "annoyance and inconvenience" resulting from the operation of nearby oil and gas wells. British-American Oil Producing Co. v.McClain, 126 P.2d 530, 533 (Okla. 1942). Article II, § 23 thus provides for compensation for the whole range of injuries normally actionable under a common law nuisance theory.[1]
C. Constitutional Taking or Damaging and Nuisance Contrasted
¶ 13 Although a claim for damages to private property is similar to common law nuisance in permitting recovery for interference with the enjoyment of private property, it differs in one important respect. At common law before a landowner could prevail on a claim for damage to his property he had to show that his neighbor's actions were somehow unreasonable or unlawful.See, e.g., Briscoe v. Harper Oil Company, 702 P.2d 33, 36
(Okla. 1985). Article II, § 23 changed this rule. Boyce v.Dundee Healdton Sand Unit, 560 P.2d 234, 237 (Okla.Ct.App. 1975); Greyhound Leasing Financial Corporation v. Joiner CityUnit, 444 F.2d. 439, 441 (10th Cir. 1971). Under the constitutional provision it is no defense that the challenged activity is reasonable or even that it has been specifically permitted by the government. So long as the activity causes substantial damage to the property of another there is liability. The Oklahoma Supreme Court has stated the matter succinctly:
 Section 23, article 2, Bill of Rights, O.S. 1941, provides that no private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner. In a case of this character the use need not be of a careless or negligent nature, or unreasonable or unwarrantable to entitle the injured party to recover. If the use causes a substantial injury to the property of another he may recover as for a private nuisance.
British-American Oil Producing Co. v. McClain, 126 P.2d 530,532 (Okla. 1942). See also Lone Star Producing Company v. Jury,445 P.2d 284, 287 (Okla. 1968); Gulf Oil Corporation v. Hughes,371 P.2d 81, 83 (Okla. 1962); Garland Coal Mining Company v.Few, 267 F.2d 785, 788 (10th Cir. 1959); Lyons v. McKay,313 P.2d 527, 529 (Okla. 1957).
¶ 14 Although the fact that an activity is specifically authorized by statute does not bar an action for damages under Section 23, it does bar an action for an injunction. Where the offending use has been "legalized," Section 23 only allows an action for money damages. It does nor permit an injunction.Sharp v. 251st Street Landfill, 810 P.2d 1270, 1274 n. 4 (Okla. 1991); Gulf Oil v. Hughes, 371 P.2d at 83; British-AmericanOil, 126 P.2d at 532; but see Malnar v. Whitfield,774 P.2d 1075, 1078 (Okla.Ct.App. 1989) (implying that injunction might be available if money remedy inadequate). In these circumstances, however, it is important to determine whether the permit or license specifically authorizes the challenged activity or whether, as is often the case, the general activity has been legalized but the specific manner in which it is being carried out has not. See Oklahoma City v. West, 7 P.2d 888, 892 (Okla. 1931); cf. Union Oil Company of California v. Heinsohn,43 F.3d 500, 504 (10th Cir. 1994) (applying same distinction in nuisance context).
¶ 15 Under Article II, § 23 of the Oklahoma Constitution, then, there is an independent, constitutional cause of action for any substantial injury to the use and enjoyment of private property.
 III. THE FEED YARDS ACT DOES NOT AUTHORIZE THE TAKING OR DAMAGING OF THE PROPERTY OF ANOTHER
¶ 16 Given that there is a constitutional right to compensation for damage to private property the question remains whether the Feed Yards Act can, consistent with the Constitution, provide immunity from nuisance actions. Fortunately, the Oklahoma Supreme Court has already answered this question.
¶ 17 The Feed Yards Act is not the only provision of Oklahoma law that provides that officially sanctioned actions cannot be considered a nuisance. In fact, Oklahoma statutes have provided since 1910 that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." 50O.S. 1991, § 4[50-4]. No court has ever questioned the constitutionality of this provision. Instead, when faced with a claim of property damage arising from a statutorily sanctioned activity, the courts have held that although 50 O.S. 1991, § 4[50-4]
bars relief under a statutory nuisance claim, it does not affect the constitutional cause of action created by Article II, § 23.
¶ 18 E.I. Du Pont de Nemours Powder Co. v. Dodson,150 P. 1085 (Okla. 1915), presented a situation similar to the permitting provisions of the Feed Yards Act. The plaintiff sought an injunction against a company which was storing large amounts of explosives on adjoining property. Plaintiff claimed that the explosives constituted a nuisance. At the time, the storing of explosives was governed by a regulatory scheme which required those seeking to store explosives to first obtain a permit. To obtain a permit the applicant had to submit detailed information about the construction and location of the facility. The defendant argued that its explosives were stored under a permit from the state as part of a carefully crafted regulatory scheme which specifically authorized both the manner and location of storage and thus, under the authority of what is now 50 O.S.1991, § 4[50-4], could not be considered a nuisance. The Court agreed with the defendant and denied the injunction;
 [T]here is no escape from the conclusion that the storage house herein complained of was erected and is maintained under the express authority of a statute, and therefore . . . cannot be deemed a nuisance.
E.I. Du Pont de Nemours Powder Company v. Dodson,150 P. at 1087.
¶ 19 However, the Court held that the permit did not bar a suit for damages under Section 23:
 [W]hilst the Legislature may legalize an act which might otherwise be a nuisance, it cannot authorize the taking or damaging of private property. . . . The sole relief sought herein is for the abatement of an alleged nuisance, and this prayer cannot be granted, because the acts complained of constitute . . . a legalized nuisance. However, it does not necessarily follow that the plaintiff in a proper action would not be entitled to recover compensation for any damage to his property he may be able to establish.
Id.
¶ 20 In Fairfax Oil v. Bolinger, the plaintiff sued an oil company whose oil and gas drilling caused vibrations which damaged her property. The Supreme Court held that the drilling was done under express authority of a valid city ordinance enacted pursuant to statutory sanction and thus, under Section 4 of Title 50, the drilling could not be considered a nuisance.97 P.2d at 575. This, however, did not deprive the plaintiff of a right of action:
 Constitutional provisions have intervened to protect a property owner against losses in the nature of real and substantial injury to his property, resulting from the use of adjacent or nearby property by its owner. Though the use be legal, if property of another is substantially damaged as a result thereof, the latter may recover as for a nuisance in fact. . . . Such is the purpose and effect of section 23, article 2, of the Constitution.
Id. at 575-76.
¶ 21 Indeed, as the Fairfax Oil Court points out, the whole purpose of Article II, § 23 is to provide an avenue of recovery when governmental approval of an activity immunizes it against a nuisance claim. See also Greyhound Leasing, 444 F.2d at 442. Thus, unlike the general principles of common law nuisance, in Oklahoma the lawfulness of an activity does not immunize it from a constitutional claim for damages. Stewart v. Rood,796 P.2d at 336; Gulf Oil v. Hughes, 371 P.2d at 83; British-American,126 P.2d at 533; Fairfax Oil, 97 P.2d at 576; Oklahoma City v.West, 7 P.2d at 891.
 CONCLUSION
¶ 22 Under Oklahoma law there are at least two separate causes of action for damage to private property — common law nuisance, as codified by statute, and a constitutional claim under Article II, § 23. By its terms 2 O.S. Supp. 1996, § 9-210[2-9-210](C) of the Feed Yard Act affects only the first of these. The statute does not, and indeed could not, abrogate or diminish the constitutional cause of action for taking and damaging property. Indeed, it does not even purport to affect the constitutional right of action. Instead, as is the case with the general statutory rule that a legalized use cannot be a nuisance, Section 9-210(C) merely limits the ability of a property owner to bring a nuisance claim. The property owner's constitutional rights remain intact.
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Article II, § 23 of the Oklahoma Constitution creates acause of action for the taking or damaging of private propertyfor private use.
 2. The cause of action under Article II, § 23 is distinct fromand independent of the statutory cause of action for nuisance.
 3. By its own terms the restriction which the Oklahoma FeedYards Act at 2 O.S. Supp. 1996, § 9-210(C), places on theright of nearby landowners to sue feed yard operators onlyapplies to nuisance actions and does not apply to taking ordamaging of property.
 4. Because it does not apply to actions for the taking ordamaging of property, the nuisance protection provision of theOklahoma Feed Yards Act at 2 O.S. Supp. 1996, § 9-210(C),does not contravene Article II, § 23 of the OklahomaConstitution.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
CANNON MILES TOLBERT ASSISTANT ATTORNEY GENERAL
[1] Another important similarity between Article II, § 23 and nuisance is the treatment of a plaintiff who acquired property after the offending activity was established. The basic measure of compensation for injury to private property under Section 23 will, in most instances, be the change in fair market value of the property. See, e.g., Malnar v. Whitfield, 774 P.2d 1075,1978 (Okla.Ct.App. 1989). Presumably someone who buys property next to an existing animal feeding operation will have a difficult time showing a decrease in the value of his property as a result of the CAFO. As regards an ability to obtain damages, then, this newcomer will be in a position very similar to a person who has "come to the nuisance" under common law rules.See Fisher v. Atlantic Richfield Company, 774 F. Supp. 616,619-20 (W.D. Okla. 1989).